**STATE ex rel. RICHMOND PLAZA CIVIC ASS'N et al.**

**v.**

**CITY OF HOUSTON et al.**

No. 12608.

Court of Civil Appeals of Texas.

Galveston.

June 17, 1954.

Rehearing Denied July 8, 1954.

Ewing Werlein, Harris County Dist. Atty., and Ernest A. Knipp, Houston, for appellant.

Will G. Sears, City Atty., Richard H. Burks, Senior Asst. City. Atty., and Robert L. Burns, Senior Asst. City Atty., Houston, for appellee City of Houston.

Paul Strong, Houston, for appellee City of Bellaire.

CODY, Justice.

This is a quo warranto proceeding brought through the District Attorney of Harris County upon the relation of members of the Richmond Plaza Civil Association, being some 233 in number, residing in an area which is located just outside and ad-

joining the city limits of the City of Bellaire and which is referred to in the record as the "Richmond Plaza Area". The proceeding questioned the validity of certain elections proceedings by the City of Houston held for the purpose of annexing a large territory surrounding the city, inclusive of the aforesaid "Richmond Plaza Area", and consequently questioned the authority of the City of Houston to exercise jurisdiction over said territory, inclusive of "Richmond Plaza Area", and sought, ancillarily, (1) to enjoin the City of Houston from exercising authority in the "Richmond Plaza Area", and (2) sought a declaratory judgment determining the validity of a contract between the City of Houston and the City of Bellaire by the terms of which Bellaire furnishes water and sewer service to the property owners of "Richmond Plaza Area", as well as of the ordinances which implement said contract. By the terms of said contract it is provided that the City of Bellaire should charge rates for water furnished to the property owners in the "Richmond Plaza Area" which exceed the rates and charges applied to users of water in the City of Bellaire by 50%. The terms of the contract further provide that the City of Houston must pay the sewer charges exacted by the City of Bellaire to the property owners in "Richmond Plaza Area", and no charges are made for the sewer service to owners of property within the "Richmond Plaza Area".

This appeal is from a judgment rendered in the 61st Judicial District Court of Harris County, the Honorable Ben F. Wilson presiding, in favor of the City of Houston and the City of Bellaire and against the relators in a trial which was had to the court without a jury. Appellants predicate their appeal upon eight formal points, which, however, are presented for discussion in three separate groups.

The first group presents that the election held on December 30, 1949, which presented to popular vote for adoption or rejection of the proposed extension of the city limits of Houston, was void. This, because the election also submitted the question of whether the bonded or other indebtedness of the various water districts located within the territory to be annexed should be assumed by the City of Houston, and because the voters who were permitted to participate were not limited to those owning taxable property in the City of Houston, who had duly rendered same as provided by Section 3a of Art. VI of the Texas Constitution, Vernon's Ann.St. Said first group of points further presented that said election held on December 30, 1949, was void because the same was ordered on November 29, 1949, to take place on December 30, 1949, which was a period of more than thirty days, and under relators' contention this violated Sec. 2 of Art. VIIb of the Charter of the City of Houston. (In Appendix "A" attached to this opinion we have set out the relative portions of said Art. VIIb.). We overrule relators' said first group of points.

■ We will discuss relators' foregoing contentions in inverse order, and we hold that the City Council's order of November 29, 1949, setting the election for December 30, 1949, which was more than thirty days off, did not violate Sec. 2 of Art. VIIb of the City Charter. Relators urge that Section 2(c) of said Article is controlling here. That Section relates to an "initiative" petition, and requires the council after the receipt of such a petition "within ten days after the receipt thereof * * * to either pass the ordinance", which proposes to initiate a proposed ordinance, "without alteration, or submit it to the popular vote at a special election, which must be held within *thirty* days after the date of the ordering thereof; * * *." (Emphasis ours.) Relators make no contention that the City Council was dealing here with an "initiative" petition. But here the City Council, acting under Section 4 of aforesaid Article, on its own motion, submitted to popular vote for adoption, or rejection, the ordinance to extend the city boundaries, being Ordinance No. 4490. And, as will be noted, Section 4 provides for the submission of the ordinance to popular vote to be "in the same manner and with the same force and effect as provided in this Article for submission on petition".

■ Now the council in its administrative capacity construed the quoted language to refer to Section 3 of "this Article", dealing with "referendum". In that Section it is provided that the submission to popular vote shall be made "at the next municipal election, or the Council may, in its discretion, call a special election for that purpose". We think that independently of the council's construction of Section 4, that the courts would have been inclined to have held that the language of Section 4 referred back to the preceding "referendum" Section (as did the council), since Section 4 authorizes the council on its own motion to *refer* the passing of an ordinance to popular vote. However, the council here was undertaking to administer a power conferred upon it, and unless it could be said that the council's construction was clearly wrong it should be sustained. While we find it unnecessary to pass on whether, had the thirty day provision of Section 2(c) of the Article applied here, the election would have been void, great inconvenience would result if it should now be found that the city limits had not been validly extended. Unauthorized persons would have participated in city elections. Unauthorized taxes would have been collected. And the exercise of police power in the annexed territory would have been no better than trespasses. It is because of the ensuing inconveniences that would result in overruling administrative constructions that the courts tend to adopt same where not clearly wrong. See 39 Tex. Jur. 235, et seq.

■ However, here the City Council had two strings to its bow. It duly finally passed Ordinance 3384 on December 30, 1949, after it had found that Ordinance 4490, which extended the city limits had been duly enacted by popular vote, and Ordinance 3384 in all material respects contained the same provisions as were contained in Ordinance 4490. If, therefore, for any reason Ordinance 4490 was not duly enacted by popular vote, then it was merely a void Ordinance. If Ordinance 4490 is void, there is nothing to prevent Ordinance No. 3384 from effecting a valid annexation of the territory which Ordinance No. 4490 failed to annex. Ordinance No. 3384 was duly finally passed by the City Council on December 30, 1949, after the council had canvassed the votes, and determined that the Ordinance had been adopted by popular vote. Relators' position that the territory sought to be annexed by Houston on December 30, 1949 by either Ordinance No. 4490, or Ordinance No. 3384, or both, had not become annexed, is untenable.

We find as a fact that the City Council did not submit the question to popular vote on December 30, 1949, of whether the city should assume the indebtedness of the water districts. Nor do relators make any claim that the City Council in terms did so. However, on December 28, 1949, two days before the popular election aforesaid, the City Council duly passed Ordinance No. 4586, the nature of which is indicated by its caption, which reads: "An Ordinance Fixing The Effective Date For The Taking Over By The City, Subject To Annexation, Of The Functions, Assets And Obligations Of Certain Water Supply Districts; Authorizing Certain Audits, Inventories, Examinations, Etc., Provided That If A Certain Pending Annexation Ordinance Be Not Approved This Ordinance Shall Cease To Be Of Any Effect, And Declaring An Emergency". It is relators' position in that connection that by enacting Ordinance No. 4586 pending, and prior to the election, that the City Council in effect submitted to popular vote the question of whether the indebtedness referred to in Ordinance No. 4586 should be assumed by the city. Relators contend that, by analogy, the cases of Moore v. Coffman, 109 Tex. 93, 200 S.W. 374, and Black v. Strength, County Judge, 112 Tex. 188, 246 S.W. 79, sustain such position.

We do not deem it necessary to review the cases just cited. By passing Ordinance No. 4586, the City Council was merely obeying Art. 1182c–1, V.A.T.S., which requires that a city, when it has annexed all of the territory within a water control and improvement district, take over all property and assets and assume all debts, liabilities and obligations of such district, and further requires the governing board of the

annexing city to "By ordinance, designate the date upon which the city shall take over and such district shall be abolished, but in no event later than ninety (90) days after the effective date of such annexation". As a matter of law, the language of Ordinance No. 4586, which we deem unnecessary to quote, indicates that the council intended said Ordinance as a compliance by the "governing body of the city" with the requirements of Art. 1182c–1. The reason why the legislature enacted Art. 1182c–1 is to be found in the holdings made in Harris County Drainage District No. 12 v. City of Houston, Tex.Com.App., 35 S.W.2d 118; City of Pelly v. Harris County Water Control & Improvement District No. 7, 145 Tex. 443, 198 S.W.2d 450.

■ The purpose and effect of the enactment of Art. 1182c–1 was to prevent a duplication of functions by the annexing city and the annexed districts. In Dallas County Water Control and Improvement Dist. No. 3 v. City of Dallas, 149 Tex. 362, 233 S.W.2d 291, 294, Section (2) of Art. 1182–1 (quoted in part hereinabove) was expressly held to be constitutional against the attack therein made against its validity. The relators do not here attack, as we understand it, the constitutionality of said Article. We forego pursuing the question further of whether the election of Dec. 30, 1949, may have been void by reason of Section 3a of Art. VI, of the Texas Constitution, for this reason. Ordinance No. 4490, which was adopted by popular vote on December 30, 1949, contained severability clauses providing that if any portion of the ordinance was invalid, such invalidity should not effect any other portions thereof. There were no water districts located in the "Richmond Plaza Area". Hence if Section 2 of 1182–1 should be unconstitutional insofar as it requires the annexing city to assume the debts of the annexed districts, and we in no way imply there is any such unconstitutionality, the annexation of the "Richmond Plaza Area" was not rendered invalid. The only invalidity that could result would be to that portion of said ordinance that provided for the assumption of the debts of the water districts, and their

annexation to the City of Houston and their abolition.

■ Relators' second group of points is presented by them for consideration in case it is ruled that the "Richmond Plaza Area" has been validly annexed to the City of Houston, and said group of points presents, (1) that the City of Houston had no right to tax the property of relators while authorizing the assessment and collection of higher water rates than are charged other residents of Houston, and (2) that the contract between Houston and Bellaire, together with the ordinances of said cities which implement said contract, are void where said contract authorizes water rates to be assessed and collected from residents of "Richmond Plaza Area", which are materially higher than the water charges assessed and collected from other residents of the City of Houston, and (3) that Houston was without authority to charge or authorize the charging of higher water rates to relators than were charged in the water control and improvement districts, which were annexed at the same time with the "Area". We overrule relators' second group of points.

■ As stated above, the "Richmond Plaza Area" is completely surrounded by the City of Bellaire except to the north (i. e., toward Houston), where it is bounded by Richmond Road. The evidence established that the water and sewer lines in the "Area" were originally installed by its developers, and that said developers made a contract with Bellaire binding on themselves and their vendees and said vendees' successors in title, the relators, whereby Bellaire was to furnish water and sewer services for the "Area", and the title to the lines became vested in Bellaire. We are not concerned in this case with sewer service charges, as will hereafter appear. But the contract made by the developers of the "Area" with Bellaire was to the effect that Bellaire should furnish water service to residents of the "Area" at a rate which was 50% higher than Bellaire furnished water service within its corporate limits. When the City of Houston annexed the "Area"

the right of Bellaire to furnish the services in question was terminated. City of Beaumont v. Calder Place Corporation, 143 Tex. 244, 183 S.W.2d 713, 715. At the time of the annexation Houston's closest water line to the "Area" was 3½ miles. To construct trunk water lines alone to the "Area" would have cost $373,000. And in order to connect the "Area" with a sewer connection to Houston an entire new sewer system to serve the area would have to be constructed.

On May 3, 1950, Houston and Bellaire entered an agreement which acknowledged that Bellaire was the owner of the water and sewer lines in the "Area", and that Bellaire had the right to extend such lines, and such extensions should remain the property of Bellaire. It is not material to give the terms of the agreement as to the rights of Bellaire, when the contract is terminated. The contract further provides that Bellaire shall bill the water users direct at the same rate as is charged in the city limits of Bellaire plus an additional charge of 50%. The contract provides that charges for sewer services should be charged direct to the City of Houston. The contract gives Houston the right to use Bellaire water for fighting fires.

■ It was held in Neal v. San Antonio Water Supply Co., Tex.Civ.App., 218 S.W. 35, 38, writ refused, that "It is the duty of municipal governments, which are public agencies, to furnish her citizens with all such necessary utilities, as water, lights, streets, and such other public conveniences as are necessary for their protection and benefit. It may contract with some other person or corporation to perform that service for it, just the same as it could do." If that is still the law in Texas, then the City of Houston has performed its duty to its citizens who reside in the "Area" by contracting with Bellaire to furnish such services. But Houston was not obligated to furnish water to the residents of the "Area" upon the same terms that it furnishes water to all other residents, wherever such residents might be situated, but is only obligated to furnish water without discrimination to all others *similarly situated*. See City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622. See also Caldwell v. City of Abilene, Tex.Civ.App., 260 S.W.2d 712; Botkin v. City of Abilene, Tex.Civ.App., 262 S.W.2d 732.

We venture the opinion that the City of Houston was not bound by any duty to find immediately upon annexing the "Area" $373,000 to extend its water mains to the "Area" and itself directly furnish water to the residents thereof upon the same charges it supplies water to residents who are in reach of existing water lines. City of Greenwood v. Provine, 143 Miss. 42, 108 So. 284, 45 A.L.R. 824. In order to determine the rights of citizens and the duties of the city to them, we must take into consideration the realities of the case. Water service is one service rendered by municipalities which is profitable, and a source of revenue. The right of a Home Rule City to annex territory is not limited by Statute to only so much territory as it can immediately furnish water service to from its own existing water mains. It has been some years since the "Area" was annexed. But the profit motive will in time result in the water mains of Houston being extended to the "Area". In the meantime Houston is, by its contract with Bellaire, supplying water to the residents of the "Area".

■ Under the evidence, as indicated above, when Bellaire decided to exercise its statutory power to extend its water and sewer services to customers outside its city limits, and living within the "Area", before the "Area" was annexed to Houston, it had the power to then fix such service charges as it decided the situation required. If Bellaire thereafter required a higher rate to furnish water to residents of the "Area" than was fixed against its own residents for the same services, it had the power to exact the higher rate. "But whatever it [a municipality] fixes, a rate status between the city and its outside customers is thereby established and the city cannot thereafter arbitrarily change the rate so as to discriminate, or further discriminate, between them and customers residing in the city."

City of Texarkana v. Wiggins, supra [151 Tex. 100, 246 S.W.2d 627].

The contract between Houston and Bellaire did not change the theretofore existing water rates to residents of the "Area", but continued same in force and such water rates, under the holding of the Supreme Court in the Wiggins case, supra, were the lawfully established rates at the time Bellaire extended its water service to the "Area", and under the holding of the Wiggins case, such water rates continue to be the lawful rates as between Bellaire and the residents of the "Area". In no event do the courts have any power to prevent the City of Houston from exercising its power of taxation over the "Area", which is the highest reach that governmental power can attain to, so long as the city taxes property in said "Area" upon the same basis as in the rest of Houston. The power of taxation must be exercised equally. But the power of a city to tax cannot be bridled or limited by what terms it charges for its water service.

In its third group of points the relators present that it was unlawful and discriminatory for the City of Bellaire to charge relators water rates which are fifty per cent. higher than those charged to residents of the City of Bellaire, many of whom were at a much greater distance from the source of supply than were relators. We overrule relators' third group of points.

The City of Bellaire offered evidence which was sufficient in our opinion to have justified the rates charged relators by the City of Bellaire, had the rates been established for the first time when the "Area" became a part of the City of Houston. But even under the holding by the majority of the Supreme Court in City of Texarkana v. Wiggins, supra, the established rates when Bellaire began to supply water service must be taken as lawful and proper rates. The minority in the five-to-four ruling in the Wiggins case admittedly followed the rule which prevails in most other jurisdictions, that a municipality may discriminate in favor of its own citizens in water rates. The Supreme Court will not likely depart more widely from the general rule than the majority did in the Wiggins case. But under the facts in this case we are at a loss to understand how the courts can be thought to have any jurisdiction to coerce the City of Bellaire to furnish water at rates other than it is now furnishing same. Bellaire not only has no duty to furnish water to relators, other than contractual, its only right to do so is founded on its contract with Houston. Should a court undertake to change or rewrite that contract, Bellaire not only could refuse to furnish water to relators, it would be a trespasser if it tried to furnish water to relators without the right to do so based upon a contract with Houston.

The facts here disclose a certain case of hardship which has resulted to relators. They are bound to pay taxes to the City of Houston, which they did not have to pay before they were brought into the city, and are bound to pay water rates as high as they paid before the "Area" was annexed to Houston. But the courts have no power to relieve them of the duty to pay taxes to Houston. The courts cannot require Houston to furnish relators water except upon the same basis that it furnishes same to all others similarly situated. Relators are shown to be 3½ miles remote from Houston's nearest water main. Without further extending this opinion, we hold that the court's judgment was correct and is affirmed.

Affirmed.

*Appendix "A"*

Article VIIb
Legislation By The People—
Initiative And Referendum

Section 1. General Power—The people of Houston, in addition to the method of legislation hereinbefore provided, shall have the power of direct legislation by the initiative and referendum.

Sec. 2. The Initiative—The initiative shall be exercised in the following manner:

(a) Petition—A petition signed and verified in the manner and form required for recall petition in Article VIa (Compiler's

242

Note:—See note at end of this article) by qualified electors equal to 15 per cent. of the total vote cast at the democratic primary for the nomination of Mayor and Commissioners, next preceding the filing of said petition, accompanied by the proposed legislation or measure in the form of a proposed ordinance or resolution, and requesting that such ordinance or resolution be submitted to a vote of the people, if not passed by the Council, shall be filed with the Secretary.

\* \* \* \* \* \*

(c) Action by the Council Upon Petition—If such petition be signed, as in the Charter provided, by qualified electors equal to 15 per cent. of the total vote cast at the democratic primary for the nomination of Mayor and Commissioners next preceding the filing of such petition, the Council, within ten days after the receipt thereof, except as otherwise provided in this Charter, shall either pass such ordinance or resolution without alteration, or submit it to the popular vote at a special election, which must be held within thirty days after the date of the ordering thereof; provided, however, that if any other municipal election is to be held within sixty days after the filing of the petition said proposed ordinance or resolution shall be submitted without alteration to be voted upon at such election.

Sec. 3. Referendum—If prior to the date when an ordinance or resolution shall take effect, or within thirty days after the publication of same, a petition signed and verified, as required in Section 2a hereof, by the qualified voters equal in number to 10 per centum of the total vote cast at the Democratic primary for the nomination of Mayor and Commissioners next preceding the filing of said petition, as hereinbefore provided, shall be filed with the Secretary protesting against the enactment or enforcement of such ordinance or resolution, it shall be suspended from taking effect and no action theretofore taken under such ordinance or resolution shall be legal and valid. Immediately upon the filing of such petition the Secretary shall do all things re-

quired by Section 2b of this Article. Thereupon the Council shall immediately reconsider such ordinance or resolution and, if it does not entirely repeal the same, shall submit it to popular vote at the next municipal election, or the Council may, in its discretion, call a special election for that purpose; and such ordinance or resolution shall not take effect unless a majority of the qualified electors voting thereon at such election shall vote in favor thereof.

Sec. 4. Submission by the Council—The Council, of its own motion, may submit to popular vote for adoption or rejection or repeal at any election any proposed ordinance or resolution or measure, in the same manner and with the same force and effect as provided in this Article for submission on petition. \* \* \*.

(Charter of the City of Houston)