The **CITY OF EL PASO** et
al., Appellants,

v.

The **STATE LINE, INC.**, Appellee.

No. 6752.

Court of Civil Appeals of Texas,
El Paso.

June 28, 1978.

Rehearing Denied Aug. 2, 1978.

Philip T. Cole, El Paso, for appellants.

Kemp, Smith, White, Duncan & Hammond, William J. Derrick, W. Royal Furgeson, Jr., E. Link Beck, El Paso, for appellee.

## OPINION

OSBORN, Justice.

This appeal, from the granting of a permanent injunction, involves the right of a publicly owned utility company to refuse water service to a party who seeks such service beyond the boundaries of both the City and the State. The City of El Paso owns and operates El Paso Water Utilities which provides water and sewer service to both the residents and some non-residents of the City of El Paso. See Article 1108, Tex.Rev.Civ.Stat.Ann., and El Paso City Charter, Section 92. The State Line, Inc., operates a restaurant located on leased land which lies both in Texas and New Mexico. The Utilities Board denied water service to the restaurant operator because the building where the kitchen is located and the water is to be used is in New Mexico. When Appellee connected onto an existing line in Texas, the manager of the Utilities threatened to disconnect service to the existing line. Appellee then obtained a permanent injunction to prevent any disruption of water service. We affirm.

The rules and regulations of the Utilities Board state that service may be provided to property outside the corporate limits of the City. In 1972, the Utilities manager prepared and delivered to his staff an "Operational Policy" with regard to property located in New Mexico. It states:

"1. Water and sewer service may be provided to property in New Mexico when a portion of the property is adja-

cent to the water main from which service will be provided and when one of the following two conditions prevail:

"(1) When the property to be served is a normal size lot for the area and one-half or more of the lot is within the State of Texas.

"(2) When some portion of the building to which service is to be provided lies within the State of Texas."

Mr. A. J. Needham owns the property in question which he has leased to the Appellee Corporation. Most of the leased premises is in Texas, but a part is in New Mexico. The premises contain three basic buildings, one of which is in Texas and has been subleased back to Mr. Needham for his use. The two larger buildings which are used for the restaurant are located in New Mexico. Most of the property in Texas is used for a parking lot next to the restaurant.

In 1973, Mr. Needham applied for and obtained water service to that part of the leased premises on which the small building now subleased to him is located. He paid all frontage and installation costs for this service. There were no connections or lines to provide water to the buildings in New Mexico where the restaurant is now located. In 1977, Mr. Needham leased the entire tract consisting of 1.8784 acres to Appellee for five years. The State Line, Inc., then applied for water service to the two buildings which had no water connection. Representatives of the proposed restaurant appeared before the Utilities Board on January 11, 1977, and their application was tabled for two weeks. On January 25, 1977, the Board voted to deny the application. The application was reconsidered on February 23, 1977, and again denied. The Appellee then had service on the waterline obtained by Mr. Needham in 1973 transferred to its name, and then the Appellee proceeded with plans to open a restaurant and, without any authority, installed a waterline from the connection obtained by Mr. Needham on the Texas property to the buildings located in New Mexico. When the Utilities manager advised that service would be disconnected because of the line

into New Mexico, this case resulted and the injunction enjoined the disruption of water service.

The Appellee established at the injunction hearing that the City does provide water service to approximately twenty customers in New Mexico. Most of these customers were originally provided service by the White Water Works, an independent system which the City acquired in 1955, and service has been continued by the City since that time. But several other customers were added in the 1960's and several in the 1970's. In 1962, the City made a contract to provide water service to El Paso Brick Company at its plant in New Mexico, and prior to that, in 1958, a special contract provided water service to the U.S. Government at the McGregor Range located mostly in New Mexico. Then, in 1974, a special contract provided water for the use of the residents of Colonia Escondida Development in Texas at a swimming pool located completely in New Mexico. All of these twenty or so customers still obtain water from the City of El Paso.

The testimony reflects that the application for service in this case was refused because of a desire upon the part of the Utilities Board to conserve water for residents within the City and an effort to prevent the use of water in New Mexico where the City and State have no control over use and development in the area. This is obviously a worthwhile goal for these valued public officials.

But the Court in *City of Texarkana v. Wiggins,* 151 Tex. 100, 246 S.W.2d 622 (1952), set forth the guidelines which must control the disposition of this case. In that decision, the Court was concerned primarily with utility rates, but it also discussed service as well. The Court, in its opinion, said:

"The common-law rule that one engaged in rendering a service affected with a public interest or, more strictly, what has come to be known as a utility service, may not discriminate in charges or service as between persons similarly situated is of such long standing and is so well recognized that it needs no citation

of authority to support it. The economic nature of the enterprise which renders this type service is such that the courts have imposed upon it the duty to treat all alike unless there is some reasonable basis for a differentiation. * * *

"It is settled in this state that the petitioner, upon the purchase by it of the property of the privately-owned utility, was subject to this same rule prohibiting unreasonable or unjustified discrimination in rates and service. * * *

" * * * in the absence of (1) a showing that the discrimination has a reasonable basis or (2) a statute to the contrary, a municipality may not discriminate in charges or service as between those similarly situated. * * * The real reason for the rule that, in so far as treatment of consumers is concerned, the municipally-owned utility is no different from the privately-owned utility is that the economic nature of the business has not changed; it remains a monopoly in spite of the change in ownership."

That holding was followed in *State v. City of Houston*, 270 S.W.2d 235 (Tex.Civ.App.—Galveston 1954, writ ref'd n. r. e.), where the Court noted that where the City furnished water to residents previously outside the City, its obligation was "to furnish water without discrimination to all others *similarly situated.*" Also see: *City of Galveston v. Kenner*, 111 Tex. 484, 240 S.W. 894 (1922).

In *City of Big Spring v. Board of Control*, 389 S.W.2d 523 (Tex.Civ.App.—Austin 1965), aff'd, 404 S.W.2d 810 (Tex.1966), the Court pointed out the prohibition against discrimination in the selection of those to be served and said:

"A City owning or operating a waterworks is under no duty to furnish water to persons residing beyond the corporate limits. *City of Livingston v. Wilson*, 310 S.W.2d 569, Beaumont C.C.A., writ ref., n. r. e. It may do so, however, upon such terms 'as may appear to be for the best interest of such town or city' (Sec. 3, Art. 1108) so long as it does not discriminate in so doing. (Wiggins)" [1]

This case is cited with approval in 12 McQuillin Mun. Corp. (3rd Ed.), Sec. 35.35g (1970), which notes that a municipality owning a public utility has a duty to furnish service without discrimination even to users outside the City where the utility has undertaken to provide service to those so situated. To the same effect is the holding in *Mayor and City Council of Cumberland v. Powles*, 258 A.2d 410 (Ct.App.Md.1969), where the Court said:

" * * * Having contracted to supply water to areas outside its corporate limits, the city must furnish water impartially to all those reasonably within reach of its system. * * * "

In this case, we see several extensions of service to property located totally in New Mexico. At least Appellant does meet the first criterion of the Operational Policy adopted in 1972 because the leased premises consists of a normal size lot for the area and more than one-half of such premises is within the State of Texas.

■ By its first point, Appellant complains of the trial Court's finding that the Board policy as to service in New Mexico is controlled by the 1972 Operational Policy. The manager of the Utilities testified that the staff tries to follow this Operational Policy where property is located in two states. And the Board members apparently rely upon staff recommendations, although continuing to exercise their own independent judgment. This policy, as found by the Court, was probably more restrictive than that actually implemented by the Board in other instances since it did at least require most of the property to be in Texas, whereas some of the customers had obtained water service even though all of their premises is in New Mexico. Finding no reversible error, the first point is overruled.

■ The next six points attack the Court's findings that the property leased to Appellee comes within the Operational Policy. We consider these no evidence and

---

1. This is a reference to *City of Texarkana v. Wiggins,* supra.

insufficient evidence points under the standards set forth in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). We conclude that the evidence establishes a compliance with Paragraph 1(1). The leased property is not only adjacent to a water main from which service can be provided, it already has an existing line and meter on the leased premises. The property to be served, being 1.8784 acres, is a normal size lot for the area, and Appellant does not contend otherwise. The evidence is conclusive from both testimony and plats that most of the leased premises is in Texas. Mr. Needham testified that 75 percent is in Texas and 25 percent in New Mexico. The plats reflect 1.5131 acres in Texas and .3653 acre in New Mexico. Points 2 through 7 are overruled.

The next two points attack the Court's finding that commercial establishments situated wholly or partially within the State of New Mexico are persons similarly situated to Appellee. The proof establishes several commercial establishments, including a restaurant, a lounge, and a brick company, all in New Mexico, which receive water from El Paso Water Utilities. Certainly, they are similarly situated to Appellee, but they do not comply with the Operational Policy since they do not have most of their property in Texas. Appellant urges that no service has been extended to a commercial establishment since the Operational Policy in 1972, except for one exception which was made for the residents of Colonia Escondida. But the fact remains that when the new policy was established, service was not terminated to those commercial establishments located in New Mexico which did not meet the policy requirements. If all similarly situated are to be treated equally, the Utilities may not continue to provide service for some and deny it to others "similarly situated" in New Mexico. *State v. City of Houston*, supra. Points 8 and 9 are overruled.

Points of Error Nos. 10 and 12 are immaterial to the results in this case and need not be discussed further.

Point of Error No. 11 attacks Conclusion of Law No. 3 that Appellee is enti-

tled to water service as an eligible patron paying the applied rates and following the applicable regulations. Mr. Needham testified that he paid $811.54 plus $477.18 for installation and frontage charges when the meter was installed in 1973. Mr. Tejeda, an engineering supervisor for the Utilities, testified that no additional charge would be added for service into New Mexico. The point is overruled.

Point of Error No. 13 asserts that the Court erred in finding Appellee had no adequate remedy at law and was entitled to injunctive relief to enjoin the unlawful discontinuance of existing water service to its restaurant. The restaurant opened for business in June, 1977. On July 5, 1977, the manager of El Paso Water Utilities wrote to the owner that service would be disconnected on July 22, 1977. If Appellee did not obtain an injunction, its only alternative was to sue for damages. But where the loss of profits is too uncertain or speculative because the business is new or unestablished, the rule denying recovery for loss of profits would be enforced. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938). Following that case, the Court, in *Edwards v. Ward Associates, Inc.*, 367 S.W.2d 390 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.), said:

> " * * * It is well settled that anticipated profits from a business which had not been established at the time of the alleged breach are necessarily so speculative and remote that recovery thereof will not be allowed. * * * "

Thus, in this case, if the injunction had not been granted, termination of water service would have caused the business to close very shortly after opening, and there would be no adequate remedy at law. The point is overruled.

Appellant next asserts error in the Court's Conclusion of Law No. 7 that Appellee was entitled to water service even if it was in violation of rules and regulations of the Public Service Board. Undoubtedly, Appellee extended lines to its leased premises in New Mexico without a permit and it

paid no additional charges. But Mr. Tejeda said no additional charge was required for the service into New Mexico. While we do not condone the "self-help" rule by which Appellee obtained water for the buildings in New Mexico, neither can we approve of administrative rules which permit service to some commercial establishments located wholly in New Mexico, while denying service to one located mostly in Texas. Point of Error No. 14 is overruled.

The next three points of error complain of matters previously discussed and they are all overruled.

The next point asserts that Appellee is not entitled to injunctive relief when it has not come into Court with clean hands. First, it must be noted that where the purpose of a suit is to test the validity of an order of an administrative agency, the unclean hands doctrine does not apply. *Board of Insurance Com'rs v. Texas Employers Ins. Ass'n,* 189 S.W.2d 47 (Tex.Civ. App.—Austin 1945), aff'd, 144 Tex. 543, 192 S.W.2d 149 (1946). In *Norris of Houston, Inc. v. Gafas,* 562 S.W.2d 894 (Tex.Civ.App. —Houston [1st Dist.] 1978, writ ref'd n. r. e.), the Court noted that the doctrine of unclean hands does not operate to repel all sinners from a Court of equity and that it should not be applied when the defendant has not been seriously harmed and the wrong complained of can be corrected. Point of Error No. 18 is overruled.

The last point asserts that the trial Court erred in granting an injunction because Appellee has no constitutional right to be accorded water service in New Mexico. We agree that the utility has no obligation to furnish water in New Mexico or even outside the corporate limits of the City, but having chosen to serve some customers in those areas, it cannot, as the Court noted in the *Powles* case, "be permitted to pick or choose" as to whom it will grant or refuse service. The last point is overruled.

The judgment of the trial Court is affirmed.