TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00353-CV






ECO Resources, Inc., Appellant



v.



City of Austin, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 98-02861, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 






 In this case, we determine whether five contracts for services are enforceable
against the City of Austin ("the City"). After the City annexed the territories served by five
municipal utility districts ("MUDs"), it terminated contracts that the MUDs had executed with
appellant ECO Resources, Inc. ("ECO"). ECO filed suit against the City for breach of contract. 
The district court granted the City's motion for summary judgment and denied ECO's motion. 
ECO appeals. Because we conclude that the contracts are not enforceable against the City, we
affirm the district court's judgment.


FACTS


 A MUD is a political subdivision of the state that stands on the same footing as
counties and other political subdivisions established by law. See Bennett v. Brown County Water
Improvement Dist. No. 1, 272 S.W.2d 498, 500 (Tex. 1954) (citing Harris County Flood Control
Dist. v. Mann, 140 S.W.2d 1098 (Tex. 1940)). MUDs are created under the authority of the
Texas Constitution and the Texas Water Code. Tex. Const. art. XVI, § 59; Tex. Water Code
Ann. § 54.011 (West 1972). In section 54.012 of the Water Code, the Texas Legislature expressly
delineates the purposes for which MUDs are created. Tex. Water Code Ann. § 54.012 (West
1972).(1)
 This section reflects the purposes enumerated in section 59 of article XVI of the Texas
Constitution.(2) Compare Tex. Const. art. XVI, § 59(a), with Tex. Water Code Ann. § 54.012. 
By statute, MUDs are governed by boards of directors who are authorized to contract for the
services of general managers to carry out these duties. Tex. Water Code Ann. §§ 49.051, .056
(West 2000).

 As of January 1, 1997, Circle C MUD Nos. 1, 2, 3, and 4 (collectively "the Circle
C MUDs") and Northwest Travis County MUD No. 2 ("the Northwest MUD") were providing
services to consumers under five written service contracts with ECO. Each of the MUDs was
operating under a three-year contract with ECO, which was terminable at will. While the Circle
C MUDs were required to give ECO thirty-days' notice of their intent to terminate the contract,
the Northwest MUD's contract had a sixty-day notice provision. According to the express terms
of each contract, ECO was appointed "as general manager and operator" within the MUD's
territory. Each MUD is situated adjacent to the City's boundaries. 

 The City has assumed home-rule status as provided in section five of article XI of
the Texas Constitution. Austin, Tex., Code, City Charter, ed. note to preamble (2000); Quick v.
City of Austin, 7 S.W.3d 109, 122 (Tex. 1999). As a home-rule municipality, the City has the full
power of local self-government. Tex. Loc. Gov't Code Ann. § 51.072 (West 1999). The City
has adopted a city council and city manager form of government. Austin, Tex., Code, City
Charter, art. I, § 2 (2000). The City also has the power to annex adjacent territory. See Tex.
Loc. Gov't Code Ann. § 43.021 (West 1999); City of Houston v. State ex. rel. W. Univ. Place,
176 S.W.2d 928, 931 (Tex. 1943).

 The City first alerted the MUDs that it was contemplating annexation of their
territories when it requested information concerning the assets and obligations of each MUD. The
Northwest MUD received six requests from the City between August 5 and November 14, 1997. 
The City sent two similar requests on October 20 and November 20, 1997 to the Circle C MUDs. 
The City initiated proceedings to annex the Northwest MUD and the Circle C MUDs in their
entirety on September 11 and October 23, 1997, respectively. 

 One month after the City began the process of annexing the Northwest MUD, the
board of directors for that district renewed its expired three-year contract with ECO. In renewing
the contract, ECO and the Northwest MUD modified the terms to replace the terminable-at-will
provision with a clause that provided for a term of five years with termination only for cause in
instances of material breach. Similarly, six weeks after the City commenced annexation of the
Circle C MUDs, the boards of directors for these districts amended their unexpired contracts with
ECO. Three Circle C MUDs extended the terms of their contracts to five years to expire in 2002,
with one of these MUDs also increasing the base fee to ECO. The fourth Circle C MUD contract
was for a term of three years. Like the Northwest MUD, all of the Circle C MUDs incorporated
provisions that rendered the contracts terminable only for cause in instances of material breach.

 The City continued with its annexation process, which requires publishing notices
in local newspapers, conducting public hearings, and presenting an annexation ordinance to the
city council for a vote. Austin, Tex., Code, City Charter, art. I, § 6 (2000). In accordance with
section 43.056 of the Local Government Code, the City also made service plans available. Tex.
Loc. Gov't Code Ann. § 43.056 (West 1999). Each service plan acknowledged that the City
would exercise its right to provide water and wastewater services to the annexed districts. By
enacting city ordinances nos. 971204-H and 971218-B, the Austin City Council approved
annexation of the Northwest MUD and the Circle C MUDs in December 1997. Annexation of
the Circle C MUDs was effective on December 19, 1997; the official date of the annexation of the
Northwest MUD was December 31, 1997. In March 1998, the City formally notified ECO that
it was terminating the service contracts and that it planned to assume management of the utilities
in the annexed territory the following day. The City terminated the contracts over ECO's
objections.

 In its suit against the City, ECO sought a declaratory judgment that its contracts
with the MUDs were binding and enforceable as against the City. ECO filed a motion for partial
summary judgment on all issues except damages and fees. In response, the City moved for
summary judgment on all the issues. Subsequently, both parties entered into a stipulation that
reads, "[T]he summary judgment evidence presented by the parties . . . shows that, except as to
the amount of damages, if any, there is no genuine issue as to any material fact." In the
stipulation, the City and ECO also agree that "either . . . [party] is entitled to judgment on the
undisputed facts as a matter of law." When it granted the City's motion for summary judgment,
the district court also denied ECO's motion for partial summary judgment. ECO appeals the
district court's judgment.

DISCUSSION


 Because the propriety of a ruling on a motion for summary judgment raises a
question of law, we review this matter de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994). The proper inquiry on appeal is whether the defendant, in seeking summary
judgment, fulfilled its initial burden of establishing that no genuine issue of material fact exists and
that judgment should be granted as a matter of law. City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 675-79 (Tex. 1979). Evidence is viewed in the light most favorable to the non-movant. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Similarly, all
reasonable inferences are indulged and any doubts resolved in favor of the non-movant. Id. at
549. 

 When both parties have filed motions for summary judgment and the district court
has granted one motion and denied the other, we review the summary judgment proof presented
by the parties, determine all questions presented, and "render such judgment as the trial court
should have rendered." Commissioners Court v. Agan, 940 S.W.2d 77, 80 (Tex. 1997). "[W]hen
there are multiple grounds for summary judgment and the order does not specify the ground on
which the summary judgment was granted, the appealing party must negate all grounds on appeal." 
State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 381 (Tex. 1993); accord Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989). If the appellant fails to negate each ground on which
the judgment may have been rendered, we must uphold the summary judgment. See Carr, 776
S.W.2d at 569.

 In this case, both parties have filed motions for summary judgment and the district
court granted the City's motion. Because the trial court did not specify the grounds on which it
rendered judgment, we must affirm the judgment if any of the grounds advanced in the City's
motion are meritorious. 

 Section 43.075 of the Texas Local Government Code governs the abolition of
water-related special districts, including MUDs, that become part of only one municipality. Tex.
Loc. Gov't Code Ann. § 43.075 (West 1999). Subsection (d) of this section reads as follows:


(d) If all the area in the district becomes a part of the municipality, the
municipality:


 (1) shall take over all the property and other assets of the district; 


 (2) assumes all the debts, liabilities, and obligations of the district; and 


 (3) shall perform all the functions of the district, including the provision of
services.



Id. § 43.075(d). This section also requires the Austin City Council to pass an ordinance,
designating the date on which the duties and the assumption will take effect. See id. § 43.075(e).
The underlying purpose and the intended effect of this provision is "to prevent a duplication of
functions by the annexing city and the annexed districts." State ex. rel. Richmond Plaza Civic
Ass'n v. City of Houston, 270 S.W.2d 235, 239 (Tex. Civ. App.--Galveston 1954, writ ref'd
n.r.e.); accord Jefferson County Water Control & Improvement Dist. No. 5 v. City of Port Arthur,
327 S.W.2d 415, 416 (Tex. 1959). 

 While it is undisputed that section 43.075 applies to the City's annexation of the
MUDs and requires the City to assume all of the MUDs' obligations,(3) the City argues that this
requirement extends only to valid obligations. We agree. 

 In its cross-motion for summary judgment, the City argues that the contracts, as
amended, are invalid because they (1) constitute improper delegations of governmental authority,
(2) interfere with the City's ability to exercise its police powers, and (3) are not supported by
consideration. ECO responds that its contracts for services are valid because the contracts did not
give rise to a surrender of a governmental function and that the modified contracts are supported
by consideration. We conclude that the contracts are not valid and may not be enforced against
the City.(4) 

 No governmental entity can "by contract or otherwise, bind itself in such a way as
to restrict its free exercise of . . . [its] governmental powers, nor could it abdicate its
governmental functions,(5) even for a 'reasonable time.'" Clear Lake City Water Auth. v. Clear
Lake Utils., Co., 549 S.W.2d 385, 391 (Tex. 1977) (citing City of Brenham v. Brenham Water
Co., 4 S.W. 143, 149-52 (Tex. 1887) ("[W]e do intend to be understood to hold that such
[municipal] corporations have no power to make contracts continuous in character . . . by which
they will be, in effect, precluded from exercising from time to time any power, legislative in
character, conferred upon them by law.") and City of Beaumont v. Calder Place Corp., 183
S.W.2d 713, 715 (Tex. 1944)) (footnote added). 

 In Clear Lake City Water Authority v. Clear Lake Utilities, the Texas Supreme
Court considered whether a contract between the parties gave the private utility company an
exclusive right to provide water and sewer services to certain landowners. Clear Lake City Water
Auth., 549 S.W.2d at 387. The court reasoned, "Unless the contract is treated as terminable at
will, it would have this impermissible effect [restricting the free exercise of governmental powers]
and would . . . be void ab initio . . . ." Id. at 391. In addition, the court acknowledged that in
Fidelity Land & Trust Co. v. City of West University Place an agreement was held to be
unenforceable because it "operated to inhibit the municipality in its discretionary control over a
governmental function." Id. (citing Fidelity Land & Trust Co. v. City of W. Univ. Place, 496
S.W.2d 116, 118 (Tex. Civ. App.-- Houston [14th Dist.] 1973, writ ref'd n.r.e.) ("To uphold this
agreement would be tantamount to allowing a private individual to inhibit the necessary exercise
of discretion by the municipality over a governmental function.")). While recognizing that not
every municipal contract relating to governmental functions violates the rule in Clear Lake City
Water Authority, the Court of Appeals for the Fifth Circuit determined that "the ultimate test
concerns whether the contract at issue will, as a matter of law, 'potentially control or embarrass
the City in the exercise' of these powers." Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036,
1047 (5th Cir. 1998) (quoting Cibolo Creek Mun. Auth. v. City of Universal City, 568 S.W.2d
699, 702 (Tex. Civ. App.--San Antonio 1978, writ ref'd n.r.e.)).

 ECO maintains that its service contracts do not entail a surrender of governmental
functions as ECO acted under the direction of each MUD's board of directors and would also act
under the City's direction. Furthermore, ECO asserts that, in some instances, it was required to
obtain prior approval from a MUD's board of directors, and more recently, from the Austin City
Council. We are not persuaded by ECO's argument.

 MUDs, as political subdivisions of the state, can only perform governmental
functions. See Clear Lake City Water Auth., 549 S.W.2d at 387; Bennett, 272 S.W.2d at 500. 
Such districts are created to provide and to operate a variety of services for the benefit of the
residents within their territories. Tex. Water Code Ann. § 54.201 (West 1972 & Supp. 2001)
(authorizing municipal utility districts to operate and to maintain water, wastewater, storm sewer
or drainage, irrigation, and parks systems). Both parties agree that it is commonplace for a MUD
to enter into contracts to provide services within the district's territory. Here, the Northwest
MUD and the Circle C MUDs contracted with ECO to operate and maintain water and wastewater
systems, among other services, on their behalf. Each of the five contracts names ECO as the
general manager and operator. The dispute over these contracts arises primarily from the clauses
that provide the contracts are terminable only for cause in instances of material breach.

 Home-rule cities have an exclusive right to own, maintain, and operate a water
works system. Tex. Loc. Gov't Code Ann. § 402.017(a) (West 1999); see also Calder Place
Corp., 183 S.W.2d at 715. Moreover, as the annexing party, the City is required, by statute, to
provide services to annexed areas. Tex. Loc. Gov't Code Ann. § 43.056 (West 1999). Shortly
after the City announced its intent to annex the MUD territory, ECO modified its contracts with
the MUDs to no longer allow the contracts to be terminated at will, but rather, for termination
only for cause in instances of material breach. These amended contracts would impair the City's
full control and supervision of a water works system and its ability to exercise discretionary power
with respect to this system. See Calder Place Corp., 183 S.W.2d at 715 (holding deed
reservations, which conveyed the right to use water lines, storm sewers, and sanitary sewer lines
to make future connections to furnish these services, to be void "because they have the potential
effect to take from petitioner its full control and supervision of the system and to interfere
materially with the usual exercise of its police power"). 

 ECO's continued performance under these contracts would also result in duplicated
efforts to provide utility services to the City's inhabitants. This would create the very
circumstance that the Legislature sought to prevent by enacting section 43.075, the duplication of
services. 

 ECO further argues that the City waived its complaints regarding these service
contracts when it passed the annexation ordinances. ECO contends that the City expressly
assumed all of the MUDs' obligations despite having full knowledge of the terms of the contracts. 
We conclude that ECO may not avail itself of the equitable doctrine of estoppel. 

 It is well established that "'when a unit of government is exercising its governmental
powers, it is not subject to estoppel . . . .'" Bowman v. Lumberton Indep. Sch. Dist., 801 S.W.2d
883, 888 (Tex. 1990) (quoting City of Hutchins v. Prasifka, 450 S.W.2d 829, 835 (Tex. 1970)
(recognizing two exceptions to the general rule, including in circumstances where justice requires
it and when it will not interfere with the exercise of governmental functions)); accord City of San
Angelo v. Deutsch, 91 S.W.2d 308, 311 (Tex. 1936). Providing water and wastewater services
constitutes an exercise of governmental power. Clear Lake City Water Auth., 549 S.W.2d at 391;
Calder Place Corp., 183 S.W.2d at 713. Consequently, we reject ECO's argument asserting
estoppel. 

 We hold that ECO's contracts, as modified, constitute improper delegations of
government authority because the amended contracts would affect the City's ability to exercise a
governmental function, namely, the City's exclusive right to operate and to maintain a water works
system. We conclude that ECO's service contracts are void ab initio and therefore are not
enforceable against the City.


CONCLUSION


 Accordingly, we affirm the district court's judgment, granting the City's motion
for summary judgment and denying ECO's motion for partial summary judgment. 



 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: January 11, 2001

Do Not Publish

1. Section 54.012 of the Texas Water Code reads as follows:


A district shall be created for the following purposes:


 (1) the control, storage, preservation, and distribution of its storm water and
floodwater, the water of its rivers and streams for irrigation, power, and all
other useful purposes; 


 (2) the reclamation and irrigation of its arid, semiarid, and other land needing
irrigation;


 (3) the reclamation and drainage of its overflowed land and other land needing
drainage;


 (4) the conservation and development of its forests, water, and hydroelectric power;


 (5) the navigation of its inland and coastal water;


 (6) the control, abatement, and change of any shortage or harmful excess of water;


 (7) the protection, preservation, and restoration of the purity and sanitary
condition of water within the state; and


 (8) the preservation of all natural resources of the state.


Tex. Water Code Ann. § 54.012 (West 1972).

2. Section 59 of article XVI of the Texas Constitution provides in relevant part:


(a) The conservation and development of all of the natural resources of this State,
including the control, storing, preservation and distribution of its storm and flood
waters, the waters of its rivers and streams, for irrigation, power and all other useful
purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing
irrigation, the reclamation and drainage of its overflowed lands, and other lands
needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation
and conservation of all such resources of the State are each and all hereby declared
public rights and duties; and the Legislature shall pass all such laws as may be
appropriate thereto.


Tex. Const. art. XVI, § 59(a). 
3. In accordance with section 43.075 of the Local Government Code, city ordinance nos.
971204-H and 971218-B expressly provide that "the City shall take over all the property and other
assets of the District and shall assume all the debts, liabilities, and obligations of the District." 
Austin, Tex., Ordinances 971204-H, 971218-B (Dec. 18, 1997).
4. In light of our disposition of the City's first issue, we need not reach the City's alternative
argument that the amended contracts are not supported by consideration.
5. "A 'governmental function' is an activity that is carried out as an arm of the State for the
purpose of serving the general public. The distinction between proprietary and governmental
functions does not apply to counties or other political subdivisions of the State." Loyd v. ECO
Res., Inc., 956 S.W.2d 110, 122 n.4 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (citations
omitted). 


e requires
it and when it will not interfere with the exercise of governmental functions)); accord City of San
Angelo v. Deutsch, 91 S.W.2d 308, 311 (Tex. 1936). Providing water and wastewater services
constitutes an exercise of governmental power. Clear Lake City Water Auth., 549 S.W.2d at 391;
Calder Place Corp., 183 S.W.2d at 713. Consequently, we reject ECO's argument asserting
estoppel. 

 We hold that ECO's contracts, as modified, constitute improper delegations of
government authority because the amended contracts would affect the City's ability to exercise a
governmental function, namely, the City's exclusive right to operate and to maintain a water works
system. We conclude that ECO's service contracts are void ab initio and therefore are not
enforceable against t