COOPER COUNTY BANK, APPELLANT, v. BANK OF BUNCETON, RESPONDENT.*

Kansas City Court of Appeals. July 6, 1926.

*Corpus Juris-Cyc References: Equity 21CJ, p. 96, n. 24; Fixtures, 26CJ, p. 664, n. 6; **Ignorantia juris neminem excusat,** 31CJ, p. 241, n. 70; Mortgages, 41CJ, p. 666, n. 92.

*Montgomery & Rucker* for appellant.

*Roy D. Williams* for respondent.

ARNOLD, J.—This is an action to rescind a contract dated March 30, 1921, whereby plaintiff purchased from defendant a certain promissory note of $5500, dated July 1, 1921, payable in ninety days with interest at eight per cent, executed by the Bunceton Ice, Light

& Fuel Company, and stating on its face that it was secured by a deed of trust. The petition is in two counts, the first of which asks rescission on the ground of mutual mistake and the second on the ground of false representation. The facts shown by the record are that plaintiff and defendant are both corporations organized under the laws of the State of Missouri and engaged in banking business at Bunceton, Mo. The Bunceton Ice, Light & Fuel Company was likewise a Missouri corporation and was engaged in the operation of an electric light plant at Bunceton, in connection with its ice and fuel business.

On March 30, 1921, defendant owned the $5500 note above referred to and held what was purported to be a valid deed of trust upon all the property of the light company, securing said note, covering the lot and building containing its electric light plant and ice-making equipment, the lot across the alley from said plant upon which was located the fuel shed used for storing the coal used in the plant, the electric light machinery and the ice-making machinery. The deed of trust contained the usual provisions for sale upon default.

Upon the date of said deed of trust the company was engaged in operating an electric light plant upon said real estate for the manufacture, distribution and sale of electric light and power to the people of Bunceton and vicinity. In the same building, the company was operating an ice plant for the manufacture of ice. The electric light plant and the ice plant were so constructed and placed that one steam boiler was used by both. The company was thus a public service corporation at the time of the execution of the note and deed of trust in controversy.

On said March 30, 1921, plaintiff was the owner of a note of the Bunceton Ice, Light & Fuel Company in the sum of $5000, secured by what plaintiff deemed to be a valid deed of trust upon the same property. On said date, and prior thereto, defendant had advertised for sale under its deed of trust the property of the company, including its plant and machinery for generating electricity and the real estate upon which the same were located. On said date plaintiff approached defendant for the purchase of the $5500 note in order to protect its second deed of trust. The sale was consummated for $5819.69 and the note was endorsed without recourse, the price paid being the face of the note with accrued interest and certain expenses paid by defendant.

On May 20, 1921, the Bunceton Ice, Light & Fuel Company was adjudged a bankrupt. The said company, being engaged in the manufacture, sale and distribution of electricity to the people of Bunceton and vicinity, was a public utility at the time both of said deeds of trust were executed and delivered, and such execution and

delivery were not authorized by the State Public Service Commission, as required by section 10483, Revised Statutes 1919, as follows:

"No . . . electrical corporation or water corporation shall hereafter sell, assign, lease, transfer, mortgage or otherwise dispose of or encumber the whole or any part of its franchise, works or system, necessary or useful in the performance of its duties to the public . . . without having first secured from the commission an order authorizing it so to do. Every such sale, assignment, lease, transfer, mortgage, disposition, encumbrance, merger or consolidation made other than in accordance with the order of the commission authorizing same shall be void."

It is conceded that neither plaintiff nor defendant was informed of said statutory requirement at the time said deeds of trust were taken and neither of them knew of such requirement until March 30, 1921, at which time defendant sold and assigned its note and deed of trust to plaintiff.

The petition alleges and the proof shows that plaintiff first learned of the statutory requirement and of the failure of the light company to secure authorization of the Public Service Commission after it purchased said note and after the light company had been adjudged a bankrupt. Upon learning these facts, plaintiff notified defendant that it elected to rescind the contract of purchase of said note and deed of trust, tendered them to defendant and demanded return of the purchase money. This offer was refused and this action followed.

The record further shows that after said light and fuel company went into bankruptcy, plaintiff proved up in the bankruptcy court on its second deed of trust, but did not prove up on the first. Plaintiff's attorney, by stipulation and letter, tried to get defendant bank to agree that the first deed of trust might be proved up as an unsecured debt in the bankruptcy proceeding, but in this he was unsuccessful.

The judgment was for defendant and after the overruling of its motion for a new trial, plaintiff brings the case here by appeal.

The petition alleges that by reason of the premises the parties to the said contract of sale proceeded under the impression that the deed of trust given as security for the note was valid, and that the said sale and purchase occurred by reason of a mutual mistake relative to the facts; and that without such mistake the said sale and purchase would not have been made; that on May 27, 1921, plaintiff learned of the mistake and on said date elected to rescind the contract and advised defendant of its said election, and tendered to defendant the note and deed of trust and demanded refundment which was refused.

The second count is identical with the first, exception as to grounds of rescission and alleges defendant falsely represented to

plaintiff that the instrument purporting to be a valid deed of trust was an encumbrance upon the real estate and plant of the said company, and was a first lien thereon; that plaintiff believed and relied upon such representations and so believing and relying thereon, entered into said agreement. Defendant relies upon the following defenses set up in the answer:

"(1) That at the time of the making of the contract the plaintiff owned a second and subsequent deed of trust upon said property and that as the owner of such instrument it exercised its right to purchase the first encumbrance and to make the defendant endorse the same over to it (it is not alleged that the plaintiff as a holder of a subsequent encumbrance had the right to pay off and discharge the first encumbrance and did pay off and discharge the same).

"(2) That the defendant endorsed the note to plaintiff without recourse and that the statutes fixed the resulting rights of the parties.

"(3) That plaintiff owned a second mortgage on the same property which he proved up against the bankrupt estate of the company, but plaintiff failed to prove up the note in controversy, thus increasing the value of plaintiff's note and decreasing the value of the note in controversy by reason of which the plaintiff is not entitled to relief in equity.

"(4) That the public service commission has power to validate a mortgage originally executed without its permission and that the plaintiff, not having taken any steps to validate the note and mortgage, has no standing in the court of equity.

"(5) That the mortgage in question was valid as to all the property belonging to the company which was not 'necessary to the exercise of the public franchise to furnish light in and to said city,' and that plaintiff, having failed to exhaust such security, was guilty of such laches as to bar recovery.

"(6) That plaintiff cannot now place the defendant in statu quo and therefore is not entitled to a rescission.

"(7) That the Bunceton Ice, Light and Fuel Company, the maker of the note in question, was adjudged a bankrupt and its property sold and the rights of the third parties have thus intervened.

"(8) That the plaintiff was guilty of gross negligence in not informing itself of the records of the public service commission.

"(9) That the plaintiff speculated on the property securing the deed of trust and bought the same in at the bankrupt sale and thereby acquired all that it could have received had it foreclosed under a valid mortgage.

"(10) That the plaintiff, after notice of rescission, exercised dominion over the note and deed of trust and induced the bankrupt court to sell the property free and clear of all mortgage liens, whereby the plaintiff is estopped.

"(11) That the statute prohibiting the giving of security by public service corporation is unconstitutional, because contravening sub-section 32 of Section 53 of Article IV of the Constitution of Missouri."

The evidence shows that the Bunceton Ice, Light & Fuel Company became indebted to defendant bank; that defendant appealed to plaintiff bank to carry part of the indebtedness of the company on the ground that plaintiff should do its part in promoting the welfare of the community by taking over part of said indebtedness. That plaintiff did loan said company one-half of the amount of said indebtedness and for some time thereafter each bank carried unsecured obligations of said company. Shortly after July 1, 1920, plaintiff learned that defendant had taken a deed of trust on all the property of the company to secure its debt. This is the deed of trust now in controversy.

The testimony shows that upon learning that the defendant had taken said first deed of trust, Mr. Boschert president of plaintiff bank, called upon defendant and told the cashier thereof what he had learned of the deed of trust; upon being told by said cashier that such was the fact, protested as to the fairness of the transaction, in view of what had previously occurred, and asked that plaintiff's claim be secured on the same footing; that defendant bank refused to relinquish its lien or to consent that the debt of plaintiff be placed on the same footing as its own. Thereupon plaintiff bank took a second deed of trust on the same property as security for its $5000 note.

The later developments in the case, as shown by the testimony, already have been stated herein, except that the evidence shows the total amount of unsecured claims against the company and against the bankrupt estate was $15,313.15, and that the total amount of available assets to pay said claims was $6247.87, and that dividends of forty and eight per cent were paid upon the unsecured claims and no more would be paid.

Plaintiff filed a motion in the bankruptcy court asking that the property be sold clear of encumbrance; that is to say, that the property be sold as if there were no encumbrances and that the parties having encumbrances pursue their own recourse in the bankruptcy court against the proceeds of the sale instead of the property.

The decree recites that the court "doth find the issues in favor of the defendant and against the plaintiff." There is nothing therein indicating upon what ground, or grounds, the court based its decree.

Plaintiff presents three assignments of error for our consideration, in support of its appeal. It is urged that the court erred in holding that section 10483, Revised Statutes 1919, which forbids a public service corporation to mortgage or otherwise encumber all or part of its works or system without first having secured from the Public

Service Commission an order authorizing the same, was unconstitutional as being in contravention of the Constitution of Missouri which forbids the enactment of any local or special law. Upon this charge of error, the appeal was taken to the Supreme Court, but that court, in an able opinion by BLAIR, J., held the jurisdiction of this cause is in the proper Court of Appeals. The opinion stated that the constitutional question was raised by defendant in the court below, but in view of the following statement in defendant's brief, the cause was transferred to this court:

"The constitutional question was not presented to the trial court, and was only raised in the answer to the second count. There was no evidence tending to support the second count, and the constitutional question was not presented and is not now contended for."

The Supreme Court points out, however, that the constitutional question in fact, was pleaded in the answer to both counts, but in view of the fact that defendant disclaims any further contention on this point, it is out of the case.

The remaining point for our consideration is the question of rescission. It is plaintiff's contention that a contract entered into under a mutual misconception of the legal rights of the parties amounting to a mistake of law is as amenable to rescission as one founded in a mistake of fact. It is urged that, being an equity case, where an unconscionable advantage has been gained by a mere mistake or misapprehension, equity will interfere in order to prevent intolerable injustice.

In the case of Griffith v. Townley, 69 Mo. 13, 19, the court, in an opinion by SHERWOOD, C. J., quoted with approval what is said touching this matter in the case of Champlin v. Layton, 1 Edwards Chy. (N. Y.), 467, as follows:

"If both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended; here, on account of the surprise or immediate result of the mistake of both, there can be no good reason why the court should not interfere in order to prevent the enforcement of the contract, and relieve from the unexpected consequences of it. To refuse would be to permit one party to take an unconscientious advantage of the other, and to derive a benefit from the contract which neither of them intended it should produce."

The same rule was followed in Castleman v. Castleman, 184 Mo. 432; Picotte v. Mills, 200 Mo. App. 127. The general rule in this respect is given in 20 Encyc. of Law (2 Ed.) 814, thus:

"The existence of a subject-matter being essential to every contract, it follows that the mistake of the parties in supposing something to exist which does not exist invalidates any contract in respect there-

to, except, of course, where the uncertainty of the existence of the thing is the very essence of the agreement. . . . If after a contract for the sale of real property, it turns out by operation of some settled principle of law of which both parties were alike ignorant, the party who contracted to sell had in fact no title to the land, . . . in all these cases the contract is voidable.''

Applying this rule to the facts here presented, the conclusion is inevitable that there was a mixed question of law and fact, and that equity will intervene in plaintiff's behalf.

It is not disputed that both plaintiff and defendant thought the deed of trust securing the note in question valid and that both were in ignorance of the existence of the statute applicable thereto. It is also undisputed that the contract of sale was made under this mutual mistake. It is defendant's contention that the note sold, in fact, was good and that the deed of trust was the only one of the two instruments sold of which the validity was affected by the statute (sec. 10483, R. S. 1919) and, therefore, that plaintiffs are not entitled to a rescission. We are not impressed with the argument. The undisputed testimony shows that the object plaintiff had in entering into the contract of purchase was to obtain the first deed of trust in order to protect its second, and that both parties were acting under the belief that both deeds of trust were valid. Both being invalid, there was no meeting of minds and therefore no contract of purchase.

We think defendant's argument untenable to the effect that the thing purchased was the note and as the note itself was good, plaintiff got the very thing it bought. The purchase was of the note and deed of trust and the one may not be separated from the other. It is also urged that because plaintiff was in ignorance of the law affecting the validity of the deed of trust, he may not recover under the old maxim that ''ignorance of the law excuses no one.'' But the Supreme Court has held (McIntyre v. Casey, 182 S. W. 966) that the rule reflected in this maxim is confined to mistakes as to general rules of law and has no application to mistakes of persons as to their own private rights and interests.

Defendant argues that because the note was indorsed without recourse, plaintiff has no right to recover under the statutory law of this State; but we cannot accept this as conclusive, for the very sufficient reason that this is not a suit to recover under the indorsement. Defendant also pleads and urges as a defense that plaintiff owed the second deed of trust which he proved up in the bankruptcy court, thus increasing the value of plaintiff's deed of trust and decreasing the value of the note in question which plaintiff failed to prove up.

It is apparent that if plaintiff had proved up in the bankruptcy court the note sued on herein, such act would have destroyed its right to a rescission. It is the rule that where one who is entitled to re-

scind a sale chooses to file the claim in bankruptcy, based upon the obligation purchased, this amounts to an election to affirm the purchase, and he may not thereafter sue in equity for a rescission. [See Black on Rescission, sec. 562.] Upon discovery of his right to rescind he must announce his purpose to do so, and adhere to it. [In re Kenyon et al., 156 Fed. 863; Scott v. Abbott, 160 Fed. 573.] Moreover the evidence shows that plaintiff did not succeed in proving up its own second deed of trust as a preferred claim but merely as an unsecured claim, the referee in bankruptcy holding that the ice plant upon which alone the deed of trust was valid, could not be removed from the premises without more damage to the electric plant and the building housing the same, than the ice plant was worth.

It was also urged as a defense that plaintiff, as the owner of the deed of trust in controversy, failed to procure its validation by the Public Service Commission. We find no law, nor are we cited to any, whereby the Public Service Commission is given power to validate a deed of trust which is void under the statute. The statute declares that an encumbrance made other than in accordance with the statute is void, and being void, the commission is not authorized to make it valid. In Van Shaack v. Robbins, 36 Ia. 201, the court said:

"Where the word (*void*) is used to secure a right or to confer a benefit on the public, it will as a rule be held to mean null and incapable of confirmation; but if used respecting the rights of individuals, capable of protecting themselves, it will often be held to mean voidable only." [See, also, 40 Cyc. 214.]

It is urged by defendant that the deed of trust upon the property of the Light Company which is not necessary or useful in the performance of duties to the public, is valid, and that plaintiff has failed to exhaust such security. But we think this position not sound for the reason, above stated, that the matter was in the hands of the trustee in bankruptcy, and such trustee ruled to the contrary. That the trustee was clothed with this authority is declared in the Bankruptcy Act, Vol. 36, U. S. Stat. at L., p. 480, ch. 412, sec. 8, Acts of 1910. Under the ruling of the trustee in bankruptcy, there could be no severance of the properties covered by the deed of trust.

Defense also was made upon the grounds that before plaintiff can recover, he must place defendant *in statu quo,* and argues that plaintiff failed to do this. But we think this position unwarranted under the facts. The plaintiff tendered back the property unimpaired immediately upon discovering the facts and this is all it was required to do.

Other points are urged but they are covered in what we have already said. As is required of us in equity cases, we have read the entire record. We need not suggest that in such case we will render the decree which, under the facts and the law, we deem should have

been rendered by the court below. While plaintiff charges misrepresentation on the part of defendant as an additional basis for rescission, this charge seems to have been abandoned both in the trial and in the brief before us and the point needs no discussion here.

We hold there was shown such a mutual mistake of mixed fact and law as to entitle plaintiff to prevail in this suit. The judgment therefore is reversed and the cause remanded with directions to enter a decree granting plaintiff the relief sought. *Bland, J.,* concurs; *Trimble, P. J.,* absent.