NORRIS OF HOUSTON, INC., et al., Appellants,

v.

Christine GAFAS, Appellee.

No. 17059.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 9, 1978.

Rehearing Denied March 9, 1978.

Thomas G. Bousquet, Houston, for appellants; W. McNab Miller, III, Houston, of counsel.

Lackshin & Nathan, Houston, for appellee; Bernus Wm. Fischman, A. R. Schwartz, Houston, of counsel.

PEDEN, Justice.

Plaintiffs appeal from the denial of a temporary injunction against a former employee to enforce a covenant not to compete. Mrs. Gafas says the denial was proper because her working conditions were intolerable, her former employer represented that the covenant would not be enforced, and because it was too vague to be enforceable.

Norris of Houston operates two men's hair styling salons and two barber colleges in Houston. Mrs. Gafas first worked for Norris as a manicurist but later worked as a hair stylist at its Post Oak area salon for more than four years after signing the contract containing the restrictive covenant. In January of 1977, she voluntarily resigned her position with Norris and opened her own salon between two of its locations, about a mile from Norris' Post Oak location and two miles from its Audley St. salon. Norris filed the original petition on February 10, 1977 seeking a temporary injunction to enforce this provision:

> "EMPLOYEE covenants that he will not in Harris County, Texas within three (3) years from the termination of his employment, engage in business either as principal, employee, partner or stockholder, in competition with any business carried on or contemplated at the time of termination of his employment, by the EMPLOYER, or furnish information or divulge trade or business secrets of the EMPLOYER directly or indirectly to anyone engaged or interested in such line of business."

The scope of our appellate review of the granting or refusing of a temporary

injunction is limited to a determination of whether the trial judge abused his discretion or failed to correctly apply the law to undisputed facts. *Manning v. Wieser*, 474 S.W.2d 448 (Tex.1971). We must affirm the trial court's order if there is any evidence of probative value to sustain the findings. There being no written findings in our case, we look to those presumed in support of the order. If the evidence is conflicting, we are not to substitute our judgment for that of the trial court. *Arrow Chemical Corp. v. Anderson*, 386 S.W.2d 309, 313 (Tex.Civ.App.1965, writ ref. n. r. e.).

■ Appellants' first point of error is that the trial court abused its discretion as a matter of law in denying the temporary injunction because they showed a probable right to injunctive relief and a probable injury. We sustain this point. Probable right and probable injury were clearly shown by Mrs. Gafas' having opened a hairstyling shop near the appellants' in direct competition and having successfully solicited their customers. The more difficult questions arise over the defensive issues.

When the applicant rested in this case the trial judge said he had two problems: 1) the contract prohibition against competition with any business carried on or contemplated by the employer, and 2) injunction is a "very radical" form of relief; it invokes equity powers of the court, so the applicant must come into court with clean hands. He referred to allegations of a) representations that Mrs. Gafas would not be sued if she opened another business and to allegations of b) her working conditions' being extremely difficult. The trial court's remarks served to focus the parties' attention on this appeal, but they do not constitute findings of fact, and we must affirm the trial court's order if it is supported by the evidence under any rule of law.

■ Appellants' second and third points complain that the trial court abused its discretion in apparently basing the denial of the injunction in part on vagueness of the non-competition covenant. We agree with appellants that the covenant was not vague and unenforceable. Although the prohibition of engaging in business "in competition with any business carried on or *contemplated* at the time of termination of his employment by the employer" could be unreasonable as to scope of coverage, the appellants were not seeking to enjoin Mrs. Gafas from any of their contemplated activities, so such provision was immaterial in this case.

> "(A)lthough the territory or period stipulated by the parties may be unreasonable, a court of equity will nevertheless enforce the contract by granting an injunction restraining the defendant from competing for a time and within an area that are reasonable under the circumstances."

*Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 952 (1960). In our case the appellee was engaged in a business directly competing with the one being carried on by the appellants. Had the trial court issued the temporary injunction, it should have deleted the vague provision as to any contemplated business and limited the injunction to the business of hair styling. See *Martin v. Kidde Sales and Service, Inc.*, 496 S.W.2d 714, 718 (Tex.Civ. App.1973, no writ); *Thames v. Rotary Engineering Co.*, 315 S.W.2d 589, 592 (Tex.Civ. App.1958, writ ref., n. r. e.); *Haig v. Gittings*, 260 S.W.2d 311, 313 (Tex.Civ.App. 1953, no writ). The vague provision alone does not support a denial of the temporary injunction.

In their fourth point of error the appellants say that the trial judge abused his discretion in denying their injunction, apparently basing his denial in part on unclean hands: what he described as Mrs. Gafas' extremely difficult working conditions.

■ It is well settled that an employer cannot wrongfully breach a provision of an employment contract that is favorable to the employee (such as reducing his wages without his consent and without contractual authority to do so) and then go into a court of equity to secure, by injunction, the enforcement of another provision favorable to it. *Langdon v. Progress Laundry and Cleaning Co.*, 105 S.W.2d 346 (Tex.Civ.App. 1937, writ ref.).

In *Omohundro v. Matthews*, Tex. 1960, 341 S.W.2d 401, 410, the Texas Supreme Court stated that the clean hands rule is not absolute, citing 2 Pomeroy 99:

> "The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant himself and not to some third party."

In other words, the doctrine of unclean hands "does not operate to repel all sinners from a court of equity." *Kirkland v. Handrick*, 173 S.W.2d 735 (Tex.Civ.App.1943, writ ref. w. o. m.), citing 30 C.J.S. Equity § 98, p. 487 now found at 30 C.J.S. Equity § 98, p. 1034 (1965). The clean hands maxim should not be applied when the defendant has not been seriously harmed and the wrong complained of can be corrected. *Rodgers v. Tracy*, 242 S.W.2d 900, 905 (Tex. Civ.App.1951, writ ref. n. r. e.), citing 30 C.J.S. Equity § 95, p. 484, now found at 30 C.J.S. Equity § 95, p. 1026 (1965).

It is clear that in our case the appellants' noncompetition covenant would not be enforceable against Mrs. Gafas if she had been discharged without cause. Less clear is whether the unclean hands doctrine can prevent its enforcement under the evidence here adduced.

Mrs. Gafas' position is that her intolerable working conditions were impeding her ability to perform under the contract and that the trial court properly refused to enjoin her when her employer knew, or should have known, of the illegal and intolerable working conditions in and about the premises. In her testimony, she complained of several "intolerable working conditions". Evidence of some of them was based on hearsay. We must determine whether any meet the requirement as stated in the *Omohundro* case, supra, that one who complains of the other's conduct must show that she has been injured by it; the wrong must have been done to her. The only working condition by which she may have shown herself injured or potentially injured was the use of drugs on the job. Mr. Norris Womack established and operates the companies. Mrs. Gafas' testimony about Womack's two offers of a puff from a marijuana cigarette (reluctantly accepted) and one offer of cocaine (declined) at private parties in his home do not amount to intolerable working conditions, but she named five employees she said she had seen smoke marijuana at the Post Oak location. Two of them shine shoes, one is a receptionist and two are hair stylists. She did not testify that she had ever seen Norris Womack use any drugs on the job. She said seeing the drug used made her very uncomfortable and she feared that her license could be revoked. She did not testify that she had told her superiors about use of marijuana on the job. Norris Womack testified without contradiction that he did not know of any marijuana use on the premises and did not condone it.

Mrs. Gafas also expressed dissatisfaction about her inability to communicate with management. She said she made a complaint to the accountant in confidence but was later asked about it by the manager. Her testimony about affairs between employees and about loss of tips was hearsay.

Although we have found no Texas cases holding that intolerable working conditions make a non-competition covenant unenforceable, that result might obtain if the conditions *imposed by management* amounted to a breach of the employee's contract or to a wrong done to the employee. We cannot say from the facts in our case, even when taken in the light most favorable to the trial court's order, that Mrs. Gafas' working conditions amounted to a wrong done to her by the appellants.

Appellants' fifth point of error complains that the trial judge apparently based, in part, his denial of the injunction on Womack's having allegedly said he would not enforce the covenant against Mrs. Gafas. We review her testimony. Womack said at her dinner party in May, 1976, that anyone who left his employ would be unable to make it, so he would wish them luck, but when asked why he didn't give appellee her

contract back, he said "we have to scare them somehow, don't we?" He also said that if she was very unhappy he wouldn't hold her back. In a telephone conversation in December, 1976, Womack reassured her that he would give her his blessings if she decided to leave, and at a luncheon on January 3, 1977, she asked Mr. Womack if he was going to sue her and he said "No, I am not. Eight years is a long time and we are friends." She told him her shop was going to be on Richmond Ave, in Houston, between Wesleyan and Chimney Rock, and he asked if that wasn't pretty close. When she asked him for her contract and for a letter saying that he would not enforce it, he said that was a ridiculous request.

Mrs. Gafas testified that she had leased the equipped premises for her own shop in October of 1976; she had decided then that she was going to leave, but she didn't decide when to go until January 3, 1977. We note that she did not say she had told him she was going to solicit his customers.

■ We need not discuss Womack's denial of parts of these conversations; we find no basis for holding that the injunction should be denied because Womack told Gafas he would not sue her. We hold that not all of the necessary elements of equitable estoppel have been shown, that appellants have not voluntarily and knowingly surrendered their right to sue, and that bringing this suit did not invoke the maxim of unclean hands.

■ Failure to prove any one or more of the elements of estoppel has been declared to be fatal. *Concord Oil Co. v. Alco Oil & Gas Corp.*, 387 S.W.2d 635 (Tex. 1965). Ordinarily an estoppel cannot be grounded on a promise to do something in the future. 22 Tex.Jur.2d 671, Estoppel § 9. The exception to this rule is known as the doctrine of promissory estoppel, when an actual promise must have been made and all the other elements of justifiable reliance and irreparable detriment to the promisee must be present. 31 C.J.S. Estoppel § 80, p. 470. One relying on estoppel must have exercised such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case require. If he

ignores highly suspicious circumstances which should warn him of danger or loss he cannot invoke the doctrine of estoppel. 31 C.J.S. Estoppel § 71, p. 434, p. 435.

We conclude that when Mrs. Gafas started soliciting Norris's customers (after this suit was filed), her previous conversations with Norris must have warned her of the danger that he would prosecute this suit. For the same reasons, the appellants have not been shown to have unclean hands by reason of prosecuting it.

■ Appellants' last point is that the trial court erred in sustaining an objection (based on lack of proper predicate) to a photograph of appellee's styling salon. Mrs. Gafas had said it accurately showed her shop at present. This is a proper predicate. McCormick and Ray, 2 Texas Law of Evidence 319, § 1465 (1956). However, the appellants did not show that this was such a denial of their rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

This matter was not fully developed; the trial judge ruled in the defendant's favor when the plaintiffs rested. Although the evidence adduced thus far does not support the denial of the injunction, the defendant is entitled to offer more. The order of the trial court is reversed and remanded.