**1ST COPPELL BANK, Appellant,**

v.

**Homer Lee SMITH and Paulette Smith, Appellees.**

**No. 05–86–01179–CV.**

Court of Appeals of Texas, Dallas.

Nov. 5, 1987.

Rehearing Denied Dec. 18, 1987.

Michael Lowenberg, Mary L. O'Connor, A. Lauren Carpenter, Dallas, for appellant.

Randall Reed, Dallas, for appellees.

Before HOWELL, STEWART and BAKER, JJ.

STEWART, Justice.

Homer Lee and Paulette Smith sued 1st Coppell Bank to enjoin foreclosure of their homestead and to remove a deed of trust as a cloud on their title. The Bank counterclaimed for breach of contract. After trial to the court, the court granted a permanent injunction and removed the Bank's deed of trust as a cloud on the Smiths' title. The court also denied the Bank relief on its counterclaim. In thirteen points of error, the Bank contends that: (1) the deed of trust is valid; (2) the Bank is entitled to protection as a bona fide purchaser; (3) a defective acknowledgement will not invalidate a deed of trust; (4) the contract which serves as the basis for the counterclaim is valid and enforceable; and (5) the Bank proved its affirmative defenses of unclean hands and estoppel. For the reasons below, we affirm the judgment of the trial court.

### I. *The Facts*

During the summer of 1983, the Smiths received $28,000 from John Gorman, III. In exchange, the Smiths gave Gorman, III a deed, absolute on its face, to their homestead. At the time of delivery, no name had been filled in as grantee. Although the Smiths intended that the grantee be Gorman, III or his company, Gorman, III inserted the names of his parents, John Gorman, Jr. and Katherine Gorman, as grantees. The trial court found that the Smiths and Gorman, III intended the purported sale to be a mortgage. The transaction was disguised as a sale to circumvent the homestead restriction.

On July 26, 1983, the Bank lent $28,000 to John Gorman, Jr. and Katherine Gorman, the indebtedness evidenced by a note and secured by a deed of trust on the Smiths' property purportedly conveyed to the Gormans. Both the deed from the Smiths and the deed of trust were filed of record on August 19, 1983. When payments on the note ceased, the Bank posted a notice of substitute trustee's sale to be held on April 1, 1986.

When the Smiths learned that the Bank was going to foreclose upon their home, they approached the Bank to negotiate an arrangement whereby the Smiths would assume the Gormans' obligations under the note and the Bank would not foreclose. The Smiths, their attorney and the Bank's attorney signed a letter stating that the Smiths would purchase their property from John Gorman, III for $5,000 cash and a

$29,000 note. Gorman, III would give the Bank the $5,000 cash and assign the note to the Bank. The Bank would then release its deed of trust lien.

The Smiths did not sign the note as required by the agreement, so the Bank again posted the property for foreclosure. The Smiths sued the Bank to enjoin foreclosure and to remove a cloud from their title, contending that the Gormans' signatures on the deed of trust and note were forgeries, rendering the deed of trust void.

## II. Validity of the Deed of Trust

The trial court found that neither John Gorman, Jr. nor Katherine Gorman had executed the note or deed of trust. Further, the court found that neither John nor Katherine Gorman had authorized anyone to sign his or her name to the note or deed of trust. A forged deed, or deed of trust, is void, and does not pass title to land. *Texas Osage Cooperative Royalty Pool, Inc. v. Cruze,* 191 S.W.2d 47, 54 (Tex.Civ. App.—Austin 1945, no writ); *Erwin v. Curtis,* 5 S.W.2d 547, 548 (Tex.Civ.App.— Eastland 1928, writ ref'd). The Bank cannot foreclose under a void deed of trust. In points of error five and six, the Bank contends that there is no evidence, or in the alternative, insufficient evidence to support these findings of forgery because: (1) the Gormans did not deny that the signatures on the deed of trust were theirs; (2) the Smiths failed to lay the proper predicate for the admission of the expert's testimony; (3) the Smiths' handwriting expert was not qualified as an expert; (4) the expert failed to compare the purportedly forged signatures to sufficient signatures shown to be genuine; (5) Gorman, III signed his parents' names to the deed of trust with their authority; and (6) the Gormans ratified the deed of trust.

### A. Denial of Signatures

■ The Gormans testified that they did not know whether they signed the note or deed of trust. Although they thought the signatures looked like their signatures, the Gormans could not remember whether they signed the documents. The Bank argues, without citation of authority, that absent an unequivocal denial by the purported signatories there is no evidence to support a finding that the documents were forged. We can find no authority supporting the Bank's contention that the only competent evidence of forgery is testimony from the purported signatory that the signature is not his. In fact, we find some authority in conflict with that position.

In *Buist v. Connell,* 233 S.W.2d 458 (Tex.Civ.App.—Eastland 1950, writ ref'd), a handwriting expert testified that M.M. Buist had signed a deed in the name of P.H. Harris. Harris was a fictitious name ordinarily used by O.J. Connell to hold title to property. The court held the evidence sufficient to support the fact findings of forgery without the testimony of the purported signatory—a fictitious person—or the testimony of O.J. Connell, deceased at the time of trial. Certainly, this case illustrates that the Bank's position that the purported signatory must deny his signature is untenable.

### B. Proper Predicate for Expert Testimony

■ The Bank also contends that the failure of the Gormans to deny their signatures prevents testimony of the handwriting expert. The Bank argues that expert testimony as to the authenticity of the Gormans' signatures was inadmissible absent denial of the signatures. Rule 702 of the Texas Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or *to determine a fact in issue,* a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.EVID. 702 (emphasis added). The genuineness of the Gormans' signatures was a fact in issue without an unequivocal denial of the genuineness of the signatures. The parties do not cite, and we are unaware of, any authority requiring unequivocal denial of the genuineness of a

signature as a predicate to expert handwriting testimony.

### C. *Qualifications of Expert Witness*

The Bank argues further that the testimony of Ray Walker, the proffered handwriting expert, should have been excluded because he was not shown to be qualified as an expert witness. Rule 702 of the Texas Rules of Evidence states that a witness qualified as an expert by knowledge, skill, experience, training or education may testify to assist the trier of fact to understand the evidence or to determine a fact in issue. The court's determination that a witness is qualified will not be disturbed on appeal unless a clear abuse of discretion is shown. *Milkie v. Metni,* 658 S.W.2d 678, 679 (Tex.App.—Dallas 1983, no writ).

Ray Walker testified that he had been a questioned document examiner for eighteen years. He had attended a number of seminars and courses concerning questioned document examining and had received his teaching certificate in Forensic Scriptotechniques from the Scriptology Institute of Colton, California. He completed a course of study at the International Graphoanalysis Society, including three years of residence training. Walker also testified that he had testified as a handwriting expert in Texas, Oklahoma, Arizona, Arkansas and Louisiana. He was certified to testify by the Air Force in New Mexico, the Pawhuska Indian Court, the Federal Mediation Court in Fort Worth and by federal courts in Dallas. He has been a court-appointed expert in both state and federal courts.

On voir dire by Bank's counsel, Walker testified that he has written several books on handwriting analysis, which is determining personality from handwriting. His training with the Scriptology Institute was in the area of handwriting analysis, not questioned document examination. His training at the International Graphoanalysis Society included both handwriting analysis and questioned document examination. Walker did most of his training twenty years ago and has not taken a seminar in questioned document examination in ten years. In arguing that Walker is not qualified as an expert, the Bank relies upon *Carroll v. State,* 276 Ark. 160, 634 S.W.2d 99 (1982). In *Carroll,* the Arkansas court held that the trial court did not abuse its discretion in rejecting an expert who had trained at the International Graphoanalysis Society and was primarily a graphologist, a person who discerns a person's personality from his handwriting. *Carroll,* 634 S.W.2d at 102.

▮ Walker testified that although he was trained and experienced in graphoanalysis, he was also trained and experienced in analysis of questioned documents, including forgeries. During his eighteen years as a questioned document examiner, he had testified as an expert in a number of state and federal courts. We hold that the trial court did not abuse its discretion in allowing Walker to testify as an expert.

### D. *Sufficiency of Evidence*

The Bank contends that the evidence is legally and factually insufficient to support the trial court's findings that the Gormans did not execute the deed of trust or note. The trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards as are applied in reviewing the legal or factual sufficiency of evidence supporting a jury's answer to special issues. *Baker v. Baker,* 719 S.W.2d 672, 674–75 (Tex.App.—Fort Worth 1986, no writ); *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

In reviewing the Bank's "no evidence" points, this Court will consider only the evidence tending to support the findings, disregarding all contrary or conflicting evidence, viewing the evidence in the light most favorable to the finding, and giving effect to all reasonable inferences that may properly be drawn from the evidence. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986). The court's findings will be set aside only if the record discloses that the evidence offered to prove a vital fact is no more than a scintilla. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 687 S.W.2d 8, 12 (Tex.App.—Dallas

1984, writ ref'd n.r.e.). In reviewing factual insufficiency, this Court must consider all the evidence in the case and set aside the fact finding only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

John Gorman, Jr. testified that the signature on the deed of trust looked like his signature, but that he did not remember signing the deed of trust. Katherine Gorman testified that the signature on the deed of trust looked like hers, but she did not know of her own personal knowledge whether she had signed the document. Ray Walker, after being qualified as an expert questioned document examiner, expressed his opinion that John Gorman, Jr. and Katherine Gorman did not sign the deed of trust or the note. He reached that conclusion by comparing the signatures on those documents to the following documents: (1) known signatures of John Gorman, Jr. and Katherine Gorman made in his presence; (2) quitclaim deed, dated March 4, 1985, undisputedly executed by John Gorman, Jr. and Katherine Gorman; (3) quitclaim deed, dated August 18, 1983, bearing the names John Gorman, Jr. and Katherine Gorman; (4) quitclaim deed bearing the names John Gorman and James Files; and (5) checks bearing the signature of John Gorman, III.

The Bank contends that Walker's testimony lacks probative value for two reasons. First, the Bank argues that it was improper for Walker to compare the alleged forgeries to the signature of John Gorman, III. The Bank contends that the handwriting of a third person is inadmissible for the purpose of showing that the disputed signature looks more like the writing of that third person than it does the handwriting of the alleged signer. *See Miller v. Miller,* 202 S.W.2d 859, 860–61 (Tex.Civ.App.—San Antonio 1947, no writ). The Bank did not object to the admission of Gorman, III's signature on this ground; therefore, any error in admitting the evidence has been waived. TEX. R.APP.P. 52. Their complaint on appeal, however, does not appear to be that the evidence was inadmissible. Rather, the Bank complains that there is legally and factually insufficient evidence because Walker's testimony, based upon inadmissible evidence, lacks probative value. We cannot agree. In addition to the comparisons the Bank deems improper, Walker compared the disputed signatures to known signatures of the Gormans. Walker then concluded that the documents were forged. Such evidence amply supports the trial court's findings that neither John Gorman, Jr. nor Katherine Gorman had executed the deed of trust and promissory note.

In its second attack on the weight of Walker's testimony, the Bank contends that Walker utilized less than the ideal number of exemplars to compare with the disputed signatures and that the exemplars were made several years after the deed of trust was executed. On cross-examination, Walker testified that he had only two samples of John and Katherine Gorman's signatures. He said it was customary, if possible to acquire them, to have ten to twelve samples of a person's handwriting when analyzing a disputed signature.

Opinion evidence based upon speculation or conjecture lacks probative value, *Golleher v. Herrera,* 651 S.W.2d 329, 334 (Tex.App.—Amarillo 1983, no writ), even when admitted without objection. *Dallas Railway & Terminal Co. v. Gossett,* 156 Tex. 252, 256, 294 S.W.2d 377, 380–81 (1956). We cannot conclude, however, that Walker's testimony was so speculative or conjectural as to be without probative value because he used two rather than twelve exemplars.

We hold that the evidence is legally and factually sufficient to support the trial court's findings that neither John Gorman, Jr. nor Katherine Gorman executed the deed of trust or note.

### E. *Gorman, III's Authority to Sign*

The Bank also contends that the evidence is legally and factually insufficient to support the trial court's findings that the Gormans did not authorize any person to sign

their names to the note or deed of trust. Ray Walker testified, in his expert opinion, that John Gorman, III had signed his parents' names to the note and deed of trust. The Bank avers that the evidence shows Gorman, III was authorized to sign his parents' names; therefore, the deed of trust was not forged.

■ As a matter of criminal law, "forge" means:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another *who did not authorize that act.*

TEX.PENAL CODE § 32.21(a)(1) (Vernon 1974). There does not appear to be a different definition of forgery for civil law. *See, e.g., Smith v. Dawson,* 234 S.W. 690, 691 (Tex.Civ.App.—San Antonio 1921, no writ) (citing *Scott v. State,* 40 Tex.Crim. 105, 48 S.W. 523 (1898)); *Charter Bank Northwest v. Evanston Insurance Co.,* 791 F.2d 379, 381 (5th Cir.1986) (citing TEX.PENAL CODE ANN. § 32.21(a)(1)). It seems clear, then, that if a person signs the name of another with authority to do so, the signature is not a forgery.

■ In determining the Bank's no evidence point, we will apply the standard of review enunciated in *Alm,* 717 S.W.2d at 593. The factual sufficiency of the evidence will be reviewed according to the standard provided in *In Re King's Estate,* 244 S.W.2d at 661. Katherine Gorman testified that she handled real estate investments for herself and her husband. She agreed to assist her son in his business by allowing him to purchase houses in their names. She further testified that she let her son sign their names to some documents, when he asked, but that he did not have permission to sign their names to notes. Katherine Gorman agreed that her deposition testimony, where she stated that her son had "loose permission" to sign their names to a lot of papers, was true. However, she qualified the statement, averring that she did not specify what papers during her deposition. She stated unequivocally that she did not authorize anyone to sign her name to the deed of trust. John

Gorman, Jr. also testified that he had never authorized anyone to sign his name to the deed of trust or note in question. Clearly, there is some evidence, more than a scintilla, to support the trial court's findings of fact. In considering the factual sufficiency of the evidence, this Court remains cognizant of the fact that it is the province of the fact-finder to judge the credibility of witnesses, to resolve any conflicts or inconsistencies in their testimony, and to assign the weight to be given their testimony. *See Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r. e.); *Hochheim Prairie Farm Mutual Insurance Association v. Burnett,* 698 S.W. 2d 271, 275 (Tex.App.—Fort Worth 1985, no writ). Reviewing all of the evidence, we cannot say that the trial court's findings of fact are against the great weight and preponderance of the evidence or manifestly unjust.

### F. *Ratification*

■ The Bank contends that the deed of trust is not a forgery because the Gormans ratified the transaction. The trial court found that the Gormans did not ratify the deed of trust or the note. As proof of ratification, the Bank relies upon the following: (1) the Gormans knew of the existence of the deed and the deed of trust in 1983; (2) the Gormans and the Smiths executed a residential earnest money contract whereby the Gormans agreed to sell the property to the Smiths upon the condition that the Smiths assume the note; and (3) in her deposition, Mrs. Gorman testified that she and her husband would be willing to ratify the note. This Court has held, however, that ratification will not give validity to a forged deed. *Gaynier v. Ginsberg,* 715 S.W.2d 749, 756–57 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Further, any ratification by the Gormans cannot act to bind the Smiths to a contract that they did not ratify. Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate. *Spellman v. American Universal Investment*

*Co.*, 687 S.W.2d 27, 29 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Having ratified, that party waives any right of rescission or damages. *Spellman*, 687 S.W.2d at 29; *Wise v. Pena*, 552 S.W.2d 196 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd). The waiver of a right to rescind as between the parties does not validate the transactions as to strangers.

Having held that the evidence is legally and factually sufficient to support the trial court's finding that the deed of trust was a forgery and that the deed of trust was not made valid through ratification, we overrule points of error five, six and seven.

### III. *Bona Fide Purchaser*

██ In points of error eight and nine, the Bank contends that its status as a bona fide purchaser for value prevents the trial court from removing the deed of trust as a cloud on the Smiths' title. As a general rule, the claim of homestead may not be invoked against a subsequent purchaser for value who is without notice of the facts giving rise to the claim of homestead. *McGahey v. Ford*, 563 S.W.2d 857, 861 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.); *Red River National Bank v. Latimer*, 110 S.W.2d 232, 237 (Tex.Civ.App.—Texarkana 1937, no writ). The Bank's status as a bona fide purchaser is immaterial, however, in the face of a forged instrument. A void instrument passes no title, and the fact that the grantee-mortgagee is an innocent purchaser makes no difference. *Cruze*, 191 S.W.2d at 54; *Blair v. Hennessy*, 138 S.W. 1076, 1078 (Tex.Civ.App.—Galveston 1911), *aff'd*, 107 Tex. 39 173 S.W. 871 (1915). Consequently, we overrule points of error eight and nine.

### IV. *Defective Acknowledgment*

In points of error ten and eleven, the Bank contends that the trial court erred in finding the deed of trust void because the notary's signature on the acknowledgment was forged. Because we affirm the trial court's judgment that the deed of trust is void because the Gormans' signatures were forgeries, we need not rule upon the effect of a forged acknowledgment. We must address the sufficiency of the evidence showing that the acknowledgment was forged, however, because a forged deed may be adopted by the grantor when the grantor subsequently acknowledges the deed. *Mondragon v. Mondragon*, 113 Tex. 404, 408–09, 257 S.W. 215, 217 (1923); *Bell v. Sharif–Munir–Davidson Development Corp.*, 738 S.W.2d 326, 330 (Tex.App.—Dallas, 1987). Clear and unmistakable proof that either the grantor did not appear before the notary or that the notary practiced some fraud or imposition upon the grantor is necessary to overcome the validity of a certificate of acknowledgment. *Bell*, at 330; *Stout v. Oliveira*, 153 S.W.2d 590, 596–97 (Tex.Civ.App.—El Paso 1941, writ ref'd w.o.m.).

The notary on the deed of trust is purported to be Sarah L. James of Hendrix County, Illinois. The Secretary of the State of Illinois issued a certificate stating that after diligent search of the records of his office, a notary public commission for Sarah L. James could not be found. Ray Walker, the questioned document examiner, testified that the Gormans' names on the deed of trust and the name Sarah L. James on the acknowledgment were signed by the same person. That person, in his expert opinion, was John Gorman, III.

██ We hold that the evidence is legally and factually sufficient to support the trial court's finding that the acknowledgment was forged, thereby overcoming any presumption created by a valid acknowledgment. The Bank's tenth and eleventh points of error are overruled.

### V. *Counterclaim: Breach of Contract*

In its first four points of error, the Bank contends that the trial court erred in denying it relief upon its counterclaim for breach of contract. In March 1986 the Smiths and the Bank entered into an agreement whereby the Bank agreed to release its lien on the property if the Smiths would buy back the property from Gorman, III for $5,000 cash and a $29,000 note. Gorman, III agreed to give the Bank the cash and assign the note to the Bank. The Bank agreed not to foreclose on its deed of trust

unless the Smiths did not fulfill the terms of the agreement by June 3, 1986.

The trial court found that the agreement was voidable because of mutual and unilateral mistakes of fact and of law. The Bank contends that mistake is not a ground for rescission of a settlement agreement and that any mistake was one of law which will not afford the Smiths the relief prayed for.

■ The Bank argues that the letter agreement, as a settlement of doubtful rights, cannot be set aside because the Smiths were mistaken as to their rights, citing *Camoron v. Thurmond*, 56 Tex. 22, 34–5 (1881). It is clear, however, that a compromise and settlement agreement is subject to general principles of the law of contracts. *Hernandez v. Telles*, 663 S.W.2d 91, 93 (Tex.App.—El Paso 1983, no writ); *Stewart v. Mathes*, 528 S.W.2d 116, 118 (Tex.Civ.App.—Beaumont 1975, no writ). For there to be an enforceable agreement of compromise, there must be an offer of compromise, a meeting of the minds of the parties, and an unconditional acceptance within the time and on the terms offered. *Hernandez*, 663 S.W.2d at 93; *Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency*, 517 S.W.2d 869, 873 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). It is axiomatic that mutual mistake of fact destroys the necessary meeting of the minds. Therefore, this basic contract principle applies to settlement agreements. *See Fidelity–Southern Fire Insurance Co. v. Whitman*, 422 S.W.2d 552, 557 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Pleasant v. Johnson*, 367 S.W.2d 173, 180 (Tex.Civ. App.—Beaumont 1963, writ ref'd n.r.e.); *see also Columbian National Fire Insurance Co. v. Dixie Co-operative Mail Order House*, 276 S.W. 219, 221 (Tex.Comm'n App.1925, judgmt adopted). We hold that mutual mistake is a ground for rescinding any contract, including a settlement agreement.

The Bank argues further that the mistake in this case is one of law, not of fact; consequently, the mistake cannot lead to the rescission of the contract. It is well settled that a mutual mistake of law is not a ground for rescission or cancellation of a contract. *Pollard v. Steffens*, 161 Tex. 594, 605, 343 S.W.2d 234, 237 (1961); *Tyson v. Alexander*, 672 S.W.2d 624, 626 (Tex. App.—Amarillo 1984, no writ); *Ussery v. Hollebeke*, 391 S.W.2d 497, 502 (Tex.Civ. App.—El Paso 1965, writ ref'd n.r.e.). Equity may afford relief, however, for some mistakes as to legal rights:

> Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relations, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, *treating the mistake as analogous to, if not identical with, a mistake of fact.*

*Emery v. Emery*, 75 S.W.2d 725, 731 (Tex. Civ.App.—Dallas 1934, writ dism'd) (quoting 2 Pomeroy's Equity Jurisprudence, par. 849 (4th Ed.)) (emphasis added). *See also Plains Cotton Cooperative Association v. Wolf*, 553 S.W.2d 800, 803 (Tex.Civ.App.— Amarillo 1977, writ ref'd n.r.e.).

The deciding factor in Texas cases, in distinguishing between antecedent legal rights and general law, appears to be whether the party seeking rescission complains of mistaken legal effect of the document he seeks to rescind, or of his belief as to the state of the law which caused him to execute the agreement. In *Wolf*, cotton farmers sought rescission of sales contracts which they signed out of a mistaken belief that they were already contractually bound to sell the cotton before signing any agreement. The court rescinded the contract, categorizing the mistake as one involving antecedent legal rights of the parties. *Wolf*, 553 S.W.2d at 803–04. This Court held that equitable relief was justified when the parties signed a written contract under the mistaken belief that a prior oral contract, which was actually enforce-

able, was unenforceable under the statute of frauds. *Emery*, 75 S.W.2d at 731.

We also find *Dixie Co-operative Mail Order House*, 276 S.W. 219, instructive in the case at bar. Dixie had insured its mail order warehouse with ten fire insurance companies. When the premises were damaged by fire, nine companies admitted liability. The tenth company denied the existence of a valid policy at the time of the fire, contending that the policy was cancelled for non-payment and that Dixie's late payment to a former agent did not prevent cancellation. The other nine insurance companies and Dixie signed an agreement of accord and satisfaction for each insurer to pay its pro rata share of nine-tenths of the fire damage. Dixie then sued all of the insurance companies to recover the remaining one-tenth of the damages. The court found the policy with the tenth company invalid and entered judgment that the remaining companies pay the remaining unpaid damages. The companies defended based upon their agreement with Dixie that they pay only nine-tenths of the damages.

The court held that the settlement was not binding because of a mutual mistake as to the validity of the policy with the tenth insurer, stating:

> It is argued by [insurers] that the mistake was with respect to a question of law, and therefore could not support a plea for equitable relief. But we think the mistake was more analogous to a mistake of fact than to one of law. While the general rule is well settled that a court will not relieve against a mistake of law, it is also generally held that such rule is confined to mistake of the general rules of law, and has no application to the mistake of persons as to their own private legal rights and interest.

> \*    \*    \*    \*    \*    \*

> The gist of the understanding of the parties to this settlement was that [Dixie] held a valid insurance policy ... and upon this assumption this understanding was made....

*Dixie Co-operative Mail Order House*, 276 S.W. at 221–22.

In the case at bar, the parties entered into an agreement upon the assumption that the deed of trust was valid and that the Bank was, therefore, entitled to foreclose upon the Smiths' property. The mistake was as to the private legal rights of the Bank and of the Smiths. A Missouri court has characterized a mistake as to the validity of a deed of trust as a mistake of mixed law and fact, involving private rights and interests, and has granted rescission on that ground. *Cooper County Bank v. Bank of Bunceton*, 221 Mo.App. 814, 288 S.W. 95, 98–99 (1926). We hold that the mistake, if one of law, involved antecedent, private, legal rights and may be treated as a mistake of fact. *See Emery*, 75 S.W.2d at 731; *Wolf*, 553 S.W.2d at 803. *See also Dixie Co-operative Mail Order House*, 276 S.W. at 221.

As its final argument, the Bank contends that the evidence is legally and factually insufficient to support the trial court's findings that any mistake was mutual. In determining the Bank's no evidence point, we will apply the standard of review enunciated in *Alm*, 717 S.W.2d at 593. The factual sufficiency of the evidence will be reviewed according to the standard provided in *In Re King's Estate*, 244 S.W.2d at 661.

Homer Smith testified that at the time he executed the agreement he believed that the Bank had a legal right to foreclose on his property. He did not find out that the deed of trust was a forgery until several months after signing the agreement. Paulette Smith also testified that at the time she signed the letter she thought the Bank had an enforceable deed of trust on her property and could foreclose. Paul Adams, president of the Bank, testified that Susan Rankin executed the agreement on behalf of the Bank. At the time the agreement was entered into, Adams had not made a specific determination as to whether the Gormans had signed the deed of trust, but he had assumed they had signed it. Further, the Bank had already posted the property for foreclosure and the agreement states that the Bank is entitled to foreclose if the Smiths fail to take certain actions. The trier of fact

could infer from these actions that the Bank believed the deed of trust was valid and gave it a right to foreclose. We hold that the evidence is legally and factually sufficient to support the trial court's findings of mutual mistake. Points of error one through four are overruled.

## VI. *Bank's Affirmative Defenses*

The Bank contends that the Smiths were not entitled to the equitable remedies of injunction and removal of a cloud from title because: (1) the Smiths did not have clean hands when seeking equity; and (2) the Smiths were estopped to deny that the conveyance to the Gormans was an absolute sale. The trial court found that the Smiths did not have unclean hands, but made no specific findings as to estoppel.

### A. *Unclean Hands*

The Bank contends that the Smiths were guilty of wrongdoing by giving an absolute deed to John Gorman, III, in an attempt to circumvent homestead restrictions, which Gorman, III later used to induce the Bank to lend him $28,000 secured by the property. It is well settled that one who comes seeking equity must come with clean hands. *City of Wink v. Griffith Amusement Co.*, 129 Tex. 40, 50, 100 S.W.2d 695, 702 (1936); *Gordin v. Shuler*, 704 S.W.2d 403, 408 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

The rule is not, however, absolute. The doctrine of unclean hands does not operate to repeal all sinners from a court of equity. *Omohundro v. Matthews*, 161 Tex. 367, 381, 341 S.W.2d 401, 410 (1960); *Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894, 897 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). Where the harm done to the defendant is not serious and can be otherwise corrected, the unclean hands maxim should not be applied. *Gillen v. Diadrill, Inc.*, 624 S.W.2d 259, 263 (Tex.App.—Corpus Christi 1981, writ dism'd); *Gafas*, 562 S.W.2d at 897.

It is a matter within the sound discretion of the trial court to determine whether the Smiths came into court with clean hands. *Kostelnik v. Roberts*, 680 S.W.2d 532, 536 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Grohn v. Marquardt*, 657 S.W.2d 851, 855 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Hand v. State*, 335 S.W.2d 410, 419 (Tex.Civ.App.—Houston), *writ ref'd n.r.e. per curiam*, 160 Tex. 416, 337 S.W.2d 798 (1960). Although the Bank's loss of $28,000 may on its face appear to be serious harm, the harm can be corrected in some other manner than holding the Smiths liable under a note and deed of trust not executed by them. The Bank could recover the loss from Gorman, III, the true malfeasor. The Smiths would not be unjustly enriched because they are still liable to Gorman, III for the amount he lent them.

The Bank also contends that the Smiths' breach of the letter agreement evidences unclean hands. Conduct with regard to a separate transaction will not be held to constitute unclean hands. *See Grohn*, 657 S.W.2d at 855; *Munzenrieder & Associates v. Daigle*, 525 S.W.2d 288, 281 (Tex.Civ.App.—Beaumont 1975, no writ); *Speedman Oil Co. v. Duval County Ranch Co.*, 504 S.W.2d 923, 930 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). Consequently, we hold that the trial court did not abuse its discretion in determining that the Smiths did not have unclean hands. Point of error twelve is overruled.

### B. *Estoppel*

In point of error thirteen, the Bank contends that the Smiths are estopped from challenging the Bank's lien. None of the trial court's findings of fact or conclusions of law speak to the issue of estoppel. The Bank did not formally request additional or amended findings of fact and conclusions of law. In a letter to the trial court before he signed the Smiths' proposed findings, the Bank complained of alleged errors and omissions. The Bank did not, however, complain of the omission of findings on their defense of estoppel.

A party asserting affirmative defenses in a trial before the court must request findings in support of such a defense in order to avoid waiver on appeal.

If the findings filed by the court do not include any element of the ground of defense, the party asserting the ground of defense must request additional or supplemental findings of fact. The failure to do so effects a waiver of the ground or defense. *Traweek v. Larkin*, 708 S.W.2d 942, 947 (Tex.App.—Tyler 1986, writ ref'd n.r.e.); *Pinnacle Homes, Inc. v. R.C.L. Offshore Engineering Co.*, 640 S.W.2d 629, 630 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The Bank's having waived its defense of estoppel, we overrule its thirteenth point of error.

### VII. *Conclusion*

There is legally and factually sufficient evidence to support the trial court's conclusion that the deed of trust is a forgery. As a forgery, the deed of trust is void. Further, the void instrument has not been validated through ratification. Because the deed is void, the Bank is not protected by its status as a bona fide purchaser. The evidence that the acknowledgment was forged is also legally and factually sufficient to support the trial court's finding; consequently, there is no proof that the deed of trust was adopted by a valid acknowledgment.

The parties were mutually mistaken as to their antecedent legal rights when they assumed that the deed of trust was valid and that the Bank had a right to foreclose. The trial court properly rescinded the contract, affording the Bank no relief on its counterclaim.

The Bank has failed to establish that the trial court abused its discretion in finding that the Smiths did not have unclean hands. The Bank's defense of estoppel has been waived by its failure to request additional findings of fact upon this omitted defense.

For these reasons, we affirm the judgment of the trial court: (1) granting the Smiths' request for permanent injunction against foreclosure by the Bank; (2) removing the deed of trust as a cloud upon title; and (3) providing that the Bank take nothing upon its counterclaim for breach of contract.